# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-16-00804-CR

**Robert Wayne Longoria, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
### NO. CR2015-514, THE HONORABLE GARY L. STEEL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Robert Wayne Longoria guilty of felony driving while intoxicated, *see* Tex. Penal Code §§ 49.04; 49.09, and retaliation, *see id.* § 36.06(a). Appellant pled true to the enhancement paragraph of the indictment, and the jury assessed his punishment, enhanced pursuant to the repeat offender provision of the Penal Code, *see id.* § 12.42(a), at confinement for 20 years in the Texas Department of Criminal Justice and a $4,000 fine for the DWI and confinement for ten years and a $4,000 fine for the retaliation. In six points of error on appeal, appellant complains about the denial of his pretrial motion to suppress, error in the jury charge, the admission of punishment evidence, the denial of his motion to dismiss for lack of a speedy trial, and clerical error in the judgment. Finding no reversible error, we affirm the trial court's judgment of conviction for felony DWI. To correct clerical error, we modify the trial court's judgment of conviction for retaliation and, as modified, affirm the judgment.

## BACKGROUND[1]

Kristopher Greenhill, a patrol officer with the Bulverde Police Department, initiated a traffic stop of appellant's pickup truck after observing several traffic violations. On making contact with appellant, Officer Greenhill smelled the odor of alcohol and observed several signs of intoxication. Consequently, the officer initiated a DWI investigation.

When questioned about his drinking that night, appellant said that he had "six or seven" drinks and had stopped drinking "just now." Appellant admitted that he was "already drunk" and asked the officer to "cut him a break and give him a ride." When Officer Greenhill informed appellant that he was going to proceed with the investigation, appellant said, "I'm intoxicated." The officer then attempted to conduct field sobriety tests. He administered the HGN test, and appellant exhibited six of six clues. Appellant refused to perform any further tests. Based on his observations of and interaction with appellant, Officer Greenhill concluded that appellant was intoxicated and arrested him for driving while intoxicated.

After the officer placed appellant in handcuffs, appellant became "quite belligerent" and cussed at the officer and called him several inappropriate names. Specifically, appellant called Officer Greenhill "a bitch, a pussy and a cunt" and told him that he would "fuck [his] bitch ass up." Subsequently, when the officer searched appellant, appellant resisted and repeatedly pulled away. Throughout the entire search, appellant continuously threatened the officer:

---

[1] Because the parties are familiar with the facts of the case, its procedural history, and the evidence adduced at trial, we provide only a general overview of the facts of the case here. We provide additional facts in the opinion as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, 47.4. The facts recited are taken from the testimony and other evidence presented during the proceedings below.

2

I guarantee you if you do me one on one, this Marine Corps will fuck your bitch ass up. I got you, dude. . . . You know what? When we're done, I got you're [sic] fucking name already. I guarantee you half of San Antonio will come after you. I got your fucking name and your fucking -- and you're a fucking mother fucker and I got your -- I'll take care of you, your mother and your daughter. I'm going to break their hearts.

Eventually, when the officers succeeded in placing appellant in the backseat of the patrol car,[2] appellant said, "You're mine, Greenhill. You or them are going to get hurt, one of you two."

Officer Greenhill read appellant the requisite statutory warning before requesting a sample of his breath. Appellant did not respond to the officer's request, which the officer considered a refusal to provide a breath sample. Officer Greenhill then completed, on the scene, an affidavit for a search warrant for appellant's blood.[3] Officer Escobel notarized the affidavit. Then, Officer Greenhill transported appellant to the hospital in New Braunfels. On the way, he contacted a magistrate by telephone, who agreed to review the officer's search-warrant affidavit. Officer Greenhill also contacted the New Braunfels Police Department to request that officers be sent to the hospital to assist with appellant.

At the hospital, appellant continued to threaten Officer Greenhill, threatening to find him when he was off duty. He also threatened the nursing staff and the assisting New Braunfels police officers. Officer Greenhill faxed his search-warrant affidavit to the magistrate, who faxed

---

[2] The record reflects that Josh Escobel, another patrol officer with the Bulverde Police Department, was with Officer Greenhill during the traffic stop.

[3] The officer testified that, ordinarily, a DWI suspect is taken to the police department while the officer completes the affidavit for a search warrant there. However, Officer Greenhill indicated that, given appellant's belligerent and threatening behavior, he did not feel that would be safe as there was no way to secure appellant at the police department while the paperwork was completed.

3

back a signed search warrant to obtain a sample of appellant's blood along with a court order for a nurse to assist in the process. While the emergency room nurse was attempting to draw appellant's blood, appellant threatened her, saying that he was going to "fuck her up."[4] He also repeated that threat to Officer Greenhill and the assisting officers. Because of his belligerent behavior and resistance, appellant was placed on a gurney on his stomach and held down while the nurse drew his blood.[5] Subsequent lab testing of the sample showed that appellant's blood alcohol concentration was 0.212.

Appellant was charged by indictment with felony DWI and two counts of retaliation—one for threats made against Officer Greenhill; the other for threats made against the emergency room nurse. The jury convicted appellant of the DWI (Count I) and the retaliation against Officer Greenhill (Count II) but acquitted him of the retaliation against the nurse (Count III). After appellant pled true to the enhancement paragraph of the indictment, the jury assessed his punishment at 20 years' imprisonment and a $4,000 fine for the felony DWI and ten years' imprisonment and a $4,000 fine for the retaliation. The trial court imposed sentence in accordance with the jury's verdicts, ordering the sentences to be served concurrently.

## DISCUSSION

Appellant raises six points of error in this appeal. In his first two points of error, he challenges the trial court's denial of his motion to suppress. In his third point of error, appellant

---

[4] On cross examination, the nurse testified that, after appellant made that comment, she asked him, "Are you threatening me?" and he responded, "I'm not saying that."

[5] Officer Greenhill testified that appellant was thrashing his head, pulling his hands and arms away (appellant was handcuffed with his hands behind his back), and continuously kicking.

complains about error in the jury charge.  In his fourth point of error, appellant contends that the trial court erred by admitting punishment evidence relating to prior bad acts.  In his fifth point of error, he complains about the denial of his motion to dismiss for lack of speedy trial.  Finally, in his last point of error, appellant seeks modification of the judgment of conviction for retaliation to correct clerical error.

## Motion to Suppress

In his first and second points of error, appellant contends that the trial court erred by denying his motion to suppress.  Specifically, he maintains that the search warrant for the blood draw from appellant was not supported by a "sworn affidavit" in violation of article 18.01(b) of the Code of Criminal Procedure and both the Texas and United States constitutions.[6]  Thus, he argues, the evidence of the blood alcohol analysis, reflecting a blood alcohol concentration of 0.212 grams of alcohol per 100 milliliters of blood, should have been suppressed.

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion.  *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex. Crim. App. 2013); *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).  We apply a bifurcated standard of review, *State v. Rodriguez*, 521 S.W.3d 1, 8 (Tex. Crim. App. 2017); *Weems v. State*, 493 S.W.3d 574, 577 (Tex. Crim. App. 2016), giving almost total deference to a trial court's findings of historical fact and credibility determinations that are supported by the record, but reviewing questions of law de novo,

---

[6] Appellant claims a violation of the Texas Constitution and article 18.01(b) of the Code of Criminal Procedure in his first point of error.  *See* Tex. Const. art. I, § 9; Tex Code Crim. Proc. art. 18.01(b).  He asserts a violation of the Fourth Amendment in his second point of error.  *See* U.S. Const. amend. IV.

*Furr v. State*, 499 S.W.3d 872, 877 (Tex. Crim. App. 2016); *Weems*, 493 S.W.3d at 577. We view the evidence in the light most favorable to the trial court's ruling, *Furr*, 499 S.W.3d at 877; *State v. Robinson*, 334 S.W.3d 776, 778 (Tex. Crim. App. 2011), and overturn the ruling only if it is arbitrary, unreasonable, or "outside the zone of reasonable disagreement," *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014); *Dixon*, 206 S.W.3d at 590. In our review, "[t]he prevailing party is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from it." *Matthews v. State*, 431 S.W.3d 596, 601 n.5 (Tex. Crim. App. 2014). Further, we will uphold the ruling if it is correct on any theory of law applicable to the case, *Weems*, 493 S.W.3d at 577; *Absalon v. State*, 460 S.W.3d 158, 162 (Tex. Crim. App. 2015), even if the trial judge made the ruling for a wrong reason, *Story*, 445 S.W.3d at 732.

It is well established that article 18.01(b) of the Code of Criminal Procedure requires a "sworn affidavit." *Clay v. State*, 391 S.W.3d 94, 98 (Tex. Crim. App. 2013); *Smith v. State*, 207 S.W.3d 787, 789–90 (Tex. Crim. App. 2006); *Greer v. State*, 437 S.W.2d 558, 562 (Tex. Crim. App. 1969); *Vaughn v. State*, 177 S.W.2d 59, 61–62 (Tex. Crim. App. 1943); *see* Tex. Code Crim. Proc. art. 18.01(b) ("A sworn affidavit setting forth substantial facts establishing probable cause shall be filed in every instance in which a search warrant is requested."). Further, both the United States and Texas constitutions provide that a search warrant must be based on probable cause supported by oath or affirmation. *See* U.S. Const. amend. IV ("[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."); Tex. Const. art. I, § 9 ("[N]o warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable

6

cause, supported by oath or affirmation."). To qualify as a sworn affidavit, the declaration of facts contained within the affidavit must be confirmed by oath. *See Vaughn*, 177 S.W.2d at 61. "The purpose of this oath is to call upon the affiant's sense of moral duty to tell the truth and to instill in him a sense of seriousness and responsibility." *Smith*, 207 S.W.3d at 790. In the context of a search-warrant affidavit, "an oath is both constitutionally and statutorily indispensable." *Clay*, 391 S.W.3d at 97.

At the suppression hearing, no testimony was presented by either side. The State stipulated that Officer Greenhill was not formally sworn by either Officer Escobal, who notarized Officer Greenhill's probable-cause affidavit, *see* Tex. Gov't Code § 602.002(17) (authorizing oath to be administered and certificate of fact given by peace officer if oath is administered when officer is engaged in performance of officer's duties and administration of oath relates to officer's duties), or the magistrate who issued the search warrant, *see* Tex. Code Crim. Proc. art. 18.01 (b-1) (allowing magistrate to consider information communicated by telephone or other reliable electronic means in determining whether to issue search warrant). The trial court heard arguments and took the matter under advisement.

Subsequently, in a letter to the parties, the trial court denied the motion to suppress. The court concluded that, after examining the probable-cause affidavit, the search warrant issued by the magistrate, and the police recording of the DWI stop, the evidence sufficed to show that, under the circumstances, Officer Greenhill placed himself in jeopardy of a perjury charge if the affidavit were proven false. *See Vaughn*, 177 S.W.2d at 60 (explaining that test to determine if oath has been made is whether declarant's statement would subject person to charge of perjury); *see also Smith*,

7

207 S.W.3d at 790 n.13 ("An oath is a matter of substance, not form" and "creat[es] liability for perjury or false swearing for those who abuse the warrant process by giving false and fraudulent information.") (quoting *State v. Tye*, 636 N.W.2d 473, 478 (Wis. 2001)).

We need not decide whether the circumstances here sufficed to show a "sworn affidavit." Assuming, without deciding, that the affidavit was defective due to infirmities in the oath or affirmation, we conclude that appellant's blood was seized pursuant to the applicable "good faith exception" provided under article 38.23 of the Texas Code of Criminal Procedure. *See Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005) (recognizing that trial court's suppression ruling "must be upheld if it is correct under any theory of law applicable to the case"). At least three courts of appeals have determined that evidence was admissible under the good faith exception even though the evidence was obtained pursuant to a warrant based on an improperly sworn affidavit. *See Flores v. State*, 367 S.W.3d 697, 702–03 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd); *Hunter v. State*, 92 S.W.3d 596, 602–04 (Tex. App.—Waco 2002, pet. ref'd), *overruled on other grounds by Smith v. State*, 207 S.W.3d 787 (Tex. Crim. App. 2006); *Brent v. State*, 916 S.W.2d 34, 37–38 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd). We make the same determination here.

Article 38.23(a) of the Code of Criminal Procedure provides,

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

Tex. Code Crim. Proc. art. 38.23(a). However, article 38.23(b) provides the following good faith exception for admission of evidence obtained in violation of the law:

8

It is an exception to the provisions of Subsection (a) of this Article that the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based upon probable cause.

*Id.* art. 38.23(b). Before the good faith exception to the statutory exclusionary rule may apply, there must be (1) objective good faith reliance upon (2) a warrant (3) issued by a neutral magistrate that is (4) based upon probable cause. *McClintock v. State*, 541 S.W.3d 63, 67 (Tex. Crim. App. 2017). The record here demonstrates that all of article 38.23(b)'s requirements were met.

Under the unambiguous plain language of the good faith exception, we must first determine whether the warrant was issued on probable cause. *See id.* (exclusionary rule exception requires initial determination of probable cause); *Curry v. State*, 808 S.W.2d 481, 482 (Tex. Crim. App. 1991) (same). There is no question that the totality of circumstances presented to the magistrate in this case supplied ample probable cause, and appellant does not dispute that the warrant was issued on probable cause in this case. *See State v. Elrod*, 538 S.W.3d 551, 556 (Tex. Crim. App. 2017) ("[P]robable cause exists when the facts and circumstances shown in the affidavit would warrant a man of reasonable caution in the belief that the items to be seized were in the stated place."); *State v. McLain*, 337 S.W.3d 268, 272 (Tex. Crim. App. 2011) ("Probable cause exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found at the specified location."). It is also undisputed that the warrant was issued by a neutral magistrate. *See Flores*, 367 S.W.3d at 703 ("We presume the magistrate was neutral, and there is no evidence in the record rebutting this presumption."). Therefore, we must ascertain

9

whether the evidence supports a finding that Officer Greenhill acted in objective good faith reliance upon the warrant when he obtained a sample of appellant's blood.

Officer Greenhill prepared a comprehensive affidavit in which he asserted numerous facts pertaining to appellant's intoxication. At trial, Officer Greenhill's testimony indicated that he believed that he was in possession of a valid search warrant at the time of the blood draw.[7] The officer expressed that it was his understanding that the law required him to have a search warrant to draw an individual's blood without consent and that to obtain a search warrant he had to submit a sworn affidavit to the magistrate. While he conceded that he had not been formally sworn by either Officer Escobel or the magistrate, Officer Greenhill expressed his belief that his affidavit was a sworn affidavit: "I signed the affidavit swearing and affirming that everything in the affidavit was true and correct to the best of my knowledge. That's why I signed it where it says that." Even when confronted with the absence of language reflecting an oath or affirmation in the affidavit, the officer maintained, "I signed the affidavit swearing that everything in it is true." The record reflects that Officer Greenhill presented the contents of the affidavit electronically to the magistrate, whom he talked to personally.

---

[7] Ordinarily, appellate review of a motion to suppress is limited to the record at the time of the suppression hearing. *See Turrubiate v. State*, 399 S.W.3d 147, 150–51 (Tex. Crim. App. 2013); *Rachal v. State*, 917 S.W.2d 799, 809 (Tex. Crim. App. 1996). However, appellate review may include evidence adduced at trial when the suppression issue has been consensually re-litigated by the parties during trial on the merits. *Turrubiate*, 399 S.W.3d at 151; *Gutierrez v. State*, 221 S.W.3d 680, 687 (Tex. Crim. App. 2007); *Rachal*, 917 S.W.2d at 809. Here, when Officer Greenhill testified at trial, appellant questioned the officer about issues relevant to his motion to suppress—that is, whether the officer swore to the affidavit—and re-urged his motion to suppress after the officer's testimony. The trial court again denied the motion. Thus, we consider the officer's trial testimony in our review of the trial court's denial of the motion to suppress.

10

At the suppression hearing, appellant argued that Officer Greenhill could not claim good faith reliance on the warrant because the officer "knew" that he did not swear to the affidavit. However, Officer Greenhill's trial testimony reflected his belief that he complied with the requirements of the law, and that there was nothing about the search warrant that may have caused him to believe that the warrant—issued by a neutral magistrate based on probable cause—was invalid. *See Vaughn*, 177 S.W.2d at 61 (holding that search warrant was acceptable based on affidavit of affiant who did not formally take oath but did sign affidavit in magistrate's presence, and "it was [affiant's] understanding that [he] was taking an oath").

More importantly, we assess the objective—not subjective—good faith of the officer executing the warrant. *See Dunn v. State*, 951 S.W.2d 478, 479 (Tex. Crim. App. 1997); *Flores*, 367 S.W.3d at 702–03. Officer Greenhill testified about executing the search warrant at the hospital with the assistance of an emergency room nurse who acted pursuant to the trial court's order for a nurse to assist in the process of obtaining the blood sample, which was issued at the same time as the search warrant. On its face, the search warrant issued by the magistrate contained language that the judge authorized the seizure of appellant's blood after reviewing "an affidavit in writing, under oath, hav[ing] been made before [him] by K.A. Greenhill," which objectively indicates that it was based on a sworn affidavit.

We conclude the facts presented in the record before us support a finding that Officer Greenhill acted in objective good faith reliance upon the warrant during the evidentiary search when he obtained a sample of appellant's blood. *See, e.g.*, *Flores*, 367 S.W.3d at 703 (concluding that officer acted in good faith when officer testified that he followed standard procedure in attesting to

11

his complaint and obtaining warrant, and when warrant contained language indicating that complaint was made under oath). Thus, the requirements of article 38.23(b) were met in this case.[8] Consequently, even if the search warrant was based on a defective probable-cause affidavit, the evidence seized pursuant to the warrant's execution—appellant's blood sample and the resulting toxicology results—was admissible against appellant at trial. Accordingly, we conclude that the trial court did not abuse its discretion by denying appellant's motion to suppress. We overrule appellant's first two points of error.

**Jury Charge Error**

As relevant to the indictment in this case, a person commits the offense of retaliation if the person intentionally or knowingly threatens to harm another by an unlawful act: (1) in retaliation for or on account of the service or status of another as a public servant, witness, or prospective witness; or (2) to prevent or delay the service of another as a public servant, witness, or prospective witness. Tex. Penal Code § 36.06(a)(1), (2). In defining the offense in the jury charge, the trial court provided instructions that tracked the statutory language of the offense. *See Martinez v. State*, 924 S.W.2d 693, 699 (Tex. Crim. App. 1996) (holding that jury charge tracking language of particular statute is proper charge because "[f]ollowing the law as it is set out by the Texas Legislature will not be deemed error on the part of the trial judge"); *Riddle v. State*, 888 S.W.2d 1,

---

[8] In his brief, appellant summarily asserts that a good faith exception under article 38.23 does not exist when a warrant is issued in violation of article 18.01(b). Appellant quotes *Eatmon v. State*, 738 S.W.2d 723, 725 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd), in making this assertion. However, in *Eatmon*, the court concluded that the good faith exception did not apply because the court determined that the affidavit did not set forth sufficient facts to establish probable cause. Thus, unlike here, the primary requisite of the good faith exception was not met.

8 (Tex. Crim. App. 1994) ("A jury charge which tracks the language of a particular statute is a proper charge on a statutory issue."). The court further provided instructions on the statutory definitions in the Penal Code of "harm" and "public servant." *See* Tex. Penal Code § 1.07(25), (41).

During the charge conference, appellant asked the trial court to include the following proposed definition of "true threat" in the jury charge:

> You are instructed that the Defendant may not be convicted of the offense of retaliation unless you find beyond a reasonable doubt that his communication, if any, was a "true threat." A true threat is a communication which, taken in context, would have a reasonable tendency to create apprehension that the speaker would act according to its tenor. *United States v. Morales*, 272 F.3d 284, 286 (5th Cir. 2001); *United States v. Myers*, 104 F.3d 76, 79 (5th Cir. 1997), citing *United States v. Bozeman*, 495 F.2d 508, 510 (5th Cir. 1974). These cases stand for the proposition that the First Amendment to the United States Constitution protects speech unless it constitutes a "true threat," and a true threat in the Fifth Circuit is defined as a communication that, in context, would have a reasonable tendency to create apprehension that the speaker would act according to its tenor. *Id.*

The trial court refused to include the requested instruction in the jury charge. In his third point of error, appellant claims that the trial court erred in refusing to give his requested instruction.

We review alleged jury charge error in two steps: first, we determine whether error exists; if so, we then evaluate whether sufficient harm resulted from the error to require reversal. *Arteaga v. State*, 521 S.W.3d 329, 333 (Tex. Crim. App. 2017); *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). The degree of harm required for reversal depends on whether the jury charge error was preserved in the trial court. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g) (setting forth procedure for appellate review of claim of jury charge error). If the jury charge error

13

has been properly preserved by an objection or request for instruction, reversal is required if the appellant has suffered "some harm" from the error. *Marshall*, 479 S.W.3d at 843; *Vega v. State*, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013); *Almanza*, 686 S.W.2d at 171; *see Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) ("If there was error and appellant objected to the error at trial, reversal is required if the error 'is calculated to injure the rights of the defendant,' which we have defined to mean that there is 'some harm.'").

A trial court is statutorily obligated to instruct the jury on the "law applicable to the case." *See* Tex. Code Crim. Proc. art. 36.14; *Arteaga*, 521 S.W.3d at 334. Each statutory definition that affects the meaning of an element of the offense must be communicated to the jury. *Villarreal v. State*, 286 S.W.3d 321, 329 (Tex. Crim. App. 2009); *Arline v. State*, 721 S.W.2d 348, 352 n.4 (Tex. Crim. App. 1986). The jury charge should tell the jury what law applies and how it applies to the case. *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007). The trial court's duty to instruct the jury on the "law applicable to the case" exists even when defense counsel fails to object to inclusions or exclusions in the charge. *Vega*, 394 S.W.3d at 519; *Taylor v. State*, 332 S.W.3d 483, 486 (Tex. Crim. App. 2011). The trial court is "ultimately responsible for the accuracy of the jury charge and accompanying instructions." *Vega*, 394 S.W.3d at 518 (quoting *Delgado*, 235 S.W.3d at 249); *Taylor*, 332 S.W.3d at 488.

In requesting his instruction, appellant asserted that, without an instruction defining "true threat," the jury lacked the tools to "distinguish between First Amendment protected speech and unprotected speech." *See Virginia v. Black*, 538 U.S. 343, 359 (2003) (explaining that "'[t]rue threats' encompass those statements where the speaker means to communicate a serious expression

14

of an intent to commit an act of unlawful violence to a particular individual or group of individuals"); *Watts v. United States*, 394 U.S. 705, 707 (1969) (recognizing distinction between threats and constitutionally protected speech). On appeal, appellant maintains that without the instruction the jury "was never given [the] opportunity [to determine if his conduct constituted a "true threat"], and thus Appellant was deprived of his constitutional and statutory right to have a jury decide that issue."

Appellant appears to suggest that the definition of "true threat" is necessary in order to determine if an individual "threatens" as used in the retaliation statute. However, "[b]y its terms, the retaliation statute punishes only those individuals who intentionally or knowingly harm or threaten to harm another person by an unlawful act"—that is, a "true threat"—and, therefore, "does not implicate First Amendment protections." *Ex parte Eribarne*, 525 S.W.3d 784, 786 (Tex. App.—Beaumont 2017, pet. ref'd); *see Webb v. State*, 991 S.W.2d 408, 415 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (concluding that retaliation statute does not infringe into area of constitutionally protected freedoms because it regulates only threatening speech); *see also Walker v. State*, 327 S.W.3d 790, 796 (Tex. App.—Fort Worth 2010, no pet.) ("The First Amendment permits a State to ban a 'true threat.'"); *Jacobs v. State*, 903 S.W.2d 848, 851 (Tex. App.—Texarkana 1995, pet. ref'd) ("Threats, however, are not constitutionally protected."). Thus, if a person's conduct violates the retaliation statute because the person has "threaten[ed] to harm another by an unlawful act," that conduct constitutes a "true threat." A determination that a person has violated the retaliation statute by such a threat is a determination that a person has made a "true threat." The definition of "true threat" is incorporated into the statutory definition of the offense.

Furthermore, the Code of Criminal Procedure requires that instructions to the jury be limited to setting forth the law applicable to the case and that they not express any opinion as to the weight of the evidence. *Green v. State*, 476 S.W.3d 440, 445 (Tex. Crim. App. 2015); *see* Tex. Code Crim. Proc. art. 36.14 (trial court is required to give jury written charge "setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in [its] charge calculated to arouse the sympathy or excite the passions of the jury"). As a general matter, definitions for terms that are not statutorily defined are not considered to be the "applicable law" under article 36.14, and it is thus generally impermissible for the trial court to define those terms in the jury instructions. *Morgan v. State*, 501 S.W.3d 84, 90 (Tex. Crim. App. 2016); *Green*, 476 S.W.3d at 445; *see Walters v. State*, 247 S.W.3d 204, 214 (Tex. Crim. App. 2007) ("Normally, if the instruction is not derived from the code, it is not 'applicable law.'").

"[S]pecial, non-statutory instructions, even when they relate to statutory offenses or defenses, generally have no place in the jury charge." *Kirsch v. State*, 357 S.W.3d 645, 651 (Tex. Crim. App. 2012) (quoting *Walters*, 247 S.W.3d at 211); *see Celis v. State*, 416 S.W.3d 419, 433 (Tex. Crim. App. 2013) ("Non-statutory instructions, even when they are neutral and relate to statutory offenses or defenses, generally have no place in the charge."). "An instruction, albeit facially neutral and legally accurate, may nevertheless constitute an improper comment on the weight of the evidence." *Kirsch*, 357 S.W.3d at 651; *see, e.g.*, *Brown v. State*, 122 S.W.3d 794, 797 (Tex. Crim. App. 2003).

16

Consistent with the terms of article 36.14, jurors should be permitted to "freely read [undefined] statutory language to have any meaning which is acceptable in common parlance." *Green*, 476 S.W.3d at 445 (quoting *Kirsch*, 357 S.W.3d at 650); *see Medford v. State*, 13 S.W.3d 769, 771–72 (Tex. Crim. App. 2000) (explaining that "terms not legislatively defined are typically to be understood as ordinary usage allows, and jurors may thus give them any meaning which is acceptable in common parlance"). "[N]either the defendant nor the State is entitled to a special jury instruction relating to a statutory offense or defense if that instruction (1) is not grounded in the Penal Code, (2) is covered by the general charge to the jury, and (3) focuses the jury's attention on a specific type of evidence that may support an element of an offense or a defense." *Walters*, 247 S.W.3d at 212 (citing generally *Giesberg v. State*, 984 S.W.2d 245 (Tex. Crim. App. 1998)).

However, a trial court may define a statutorily undefined term that has an established legal definition or has acquired a technical meaning that deviates from its meaning in common parlance. *Celis*, 416 S.W.3d at 433; *see Green*, 476 S.W.3d at 445 (recognizing exception to general rule that it is impermissible to instruct on meanings of terms that are not statutorily defined "for 'terms which have a known and established legal meaning, or which have acquired a peculiar and appropriate meaning in the law, as where the words used have a well-known common law meaning.'" (quoting *Kirsch*, 357 S.W.3d at 650)). Such terms are "considered as having been used in their technical sense," and, therefore, it is not error for the trial court to include in its instructions "a precise, uniform definition" to guide the jury's deliberations. *Green*, 476 S.W.3d at 445 (quoting *Medford*, 13 S.W.3d at 772).

17

Neither the term "threatens" nor the phrase "true threat" are expressly statutorily defined in the retaliation statute nor are they included in the terms defined in the "Definitions" section of the Penal Code. *See* Tex. Penal Code §§ 1.07, 36.06. Thus, the trial court was correct in refusing to give the requested definition unless the terms have an established legal definition or have acquired a technical meaning. *See Green*, 476 S.W.3d at 445; *Celis*, 416 S.W.3d at 433. Appellant has not directed us to any persuasive authority to establish that the term "threatens" has acquired technical or particular legal meaning that would apply in this context such that a jury-charge definition of "true threat" is required.

The cases that appellant cites do not address whether the term "threatens" has acquired a technical or particular legal meaning that requires including that technical or legal definition—the definition of "true threat"— in the jury charge. Rather, in the cases appellant cites, the courts addressed the meaning of "true threat" in assessing the sufficiency of the evidence to support the conviction for a threatening-type offense, not in determining whether or how to instruct the jury at trial. *See Watts*, 394 U.S. at 708 (conducting sufficiency analysis of statute prohibiting threat to President of United States and concluding that "political hyperbole" is not true threat); *United States v. Morales*, 272 F.3d 284, 287 (5th Cir. 2001) (addressing whether appellant's statements constituted "true threat" when evaluating whether evidence was sufficient to support conviction for interstate transmission of threatening communications).[9] However, the fact that an

---

[9] At trial, appellant also relied on *United States v. Myers*, 104 F.3d 76, 79 (5th Cir. 1997). In *Meyers*, the court concluded that appellant's communication did not lose the status as a threat because appellant had previously uttered similar words; the status of the threat remained even after initial threatening communication. We observe that the court did not use the term "true threat" at all but merely defined "threat" as used in the interstate communications statute.

18

appellate court applies a definition to a statutorily undefined term in reviewing the sufficiency of the evidence does not in turn dictate that a trial court must define that term for the jury when the statute does not. *See Kirsch*, 357 S.W.3d at 651; *Cormier v. State*, 540 S.W.3d 185, 191 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd); *Nava v. State*, 379 S.W.3d 396, 420 (Tex. App.—Houston [14th Dist.] 2012), *aff'd*, 415 S.W.3d 289 (Tex. Crim. App. 2013).

By its terms, the retaliation statute criminalizes conduct that constitutes a "true threat"—that is, a threat "to harm another by an unlawful act"—which is not protected by the First Amendment. Thus, contrary to appellant's contention, the requested instruction was not necessary for the jury to apply the retaliation law to the facts of the case as established by the evidence at trial. The requested definition distinguishing a "true threat" from First Amendment protected speech is incorporated into the statutory definition of the offense. Furthermore, we have found no persuasive authority to establish that the term "threatens" as used in the retaliation statute has acquired a technical or particular legal meaning that would require the requested instruction. Accordingly, we conclude the trial court did not err in failing to include appellant's requested instruction defining "true threat" in the jury charge.[10] We overrule appellant's third point of error.

---

Appellant also relied on an unpublished opinion from the Dallas Court of Appeals, *see Estep v. State*, No. 05-94-00584-CR, 1997 WL 314715, at *1 (Tex. App.—Dallas June 12, 1997, pet. ref'd) (mem. op., not designated for publication), which addressed whether the trial court properly denied a pretrial motion to quash. The court distinguished a threat from constitutionally protected speech and concluded that the defendant's statement, taken in context, was a "true threat" not entitled to constitutional protection and, thus, the trial court properly denied the defendant's motion to quash the information. Again, how to instruct the jury regarding a threat was not addressed.

[10] Finding no error in the jury charge, we need not reach appellant's claim that he suffered "some harm." *See Celis v. State*, 416 S.W.3d 419, 423 (Tex. Crim. App. 2013); *Barrios v. State*, 283 S.W.3d 348, 353 (Tex. Crim. App. 2009).

**Punishment Evidence**

In his fourth point of error, appellant asserts that the trial court erred by admitting two punishment exhibits—a penitentiary packet and motion to revoke—that both related to his 2001 judgment revoking community supervision for his 1999 felony DWI.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016); *Sandoval v. State*, 409 S.W.3d 259, 297 (Tex. App.—Austin 2013, no pet.). An abuse of discretion does not occur unless the trial court acts "arbitrarily or unreasonably" or "without reference to any guiding rules and principles." *State v. Hill*, 499 S.W.3d 853, 865 (Tex. Crim. App. 2016) (quoting *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)). Further, we may not reverse the trial court's ruling unless the determination "falls outside the zone of reasonable disagreement." *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016); *see Henley*, 493 S.W.3d at 83 ("Before a reviewing court may reverse the trial court's decision, 'it must find the trial court's ruling was so clearly wrong as to lie outside the zone within which reasonable people might disagree.'" (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008))). An evidentiary ruling will be upheld if it is correct on any theory of law applicable to the case. *Henley*, 493 S.W.3d at 93; *Sandoval*, 409 S.W.3d at 297.

During the punishment phase of trial, appellant objected to the admission of the penitentiary packet relating to his prior 2001 felony DWI conviction (a judgment revoking community supervision), claiming that he did not receive proper notice. However, as the State noted, the 2001 prior felony conviction was alleged in the enhancement paragraph of the indictment.

20

It appears that appellant was suggesting that he was entitled to notice of the particular evidence that the State intended to use to prove up the enhancement allegation rather than simply notice that the State intended to produce evidence of the conviction alleged. Thus, he maintained, because he had not seen the pen pack before trial, it was inadmissible due to the lack of notice. At that time, the trial court denied appellant's "motions to exclude the pen pack."

Subsequently, appellant objected to the admission of the pen pack containing his 2001 judgment revoking community supervision and the related motion to revoke community supervision, asserting that he did not have notice of the State's intent to introduce the bad acts alleged in the underlying revocation.[11] The State asserted that "the revoking has to be part of it because that's what makes it a final conviction." *See Ex parte Pue*, 552 S.W.3d 226, 230–31 (Tex. Crim. App. 2018) (recognizing that it is well established that under Texas law only "final" convictions can be used for enhancement purposes, that conviction is not final for enhancement purposes when imposition of sentence has been suspended and community supervision granted, that imposition of sentence is required to establish finality of conviction, and that suspended sentence can turn into final conviction if community supervision revoked). The State did not seem to dispute that appellant did not have

---

[11] Appellant offered to "waive authenticity and identity" and stipulate to his identity concerning the original 1999 judgment of conviction placing him on community supervision for felony DWI but asserted that "the revocation and the motion to revoke and the order revoking and the pen pack that show that he was in the pen, we do have an objection to that."

21

notice of the bad acts underlying the revocation.[12] The trial court denied "all" of appellant's motions "as to the entirety of the pen pack that the State is intending to show as the enhancement."

We assume, without deciding, that the trial court abused its discretion in admitting the complained-of evidence containing references to the bad acts underlying the 2001 revocation of appellant's 1999 felony DWI community supervision because appellant did not receive proper notice of these bad acts. Thus, we turn to the question of harm.

Error in admitting evidence with insufficient notice under article 37.07, section 3(g), is non-constitutional error. *See McDonald v. State*, 179 S.W.3d 571, 578 (Tex. Crim. App. 2005) (applying Rule 44.2(b) harm analysis where evidence of uncharged misconduct was admitted without notice "[b]ecause no constitutional error is involved when evidence of uncharged misconduct is admitted without notice"); *Kirby v. State*, 208 S.W.3d 568, 574 (Tex. App.—Austin 2006, no pet.) (holding that violation of evidentiary rules that results in erroneous admission of evidence is non-constitutional error subject to harm analysis under Rule 44.2(b)); *see also Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018) ("The erroneous admission of evidence is non-constitutional error."). Under Rule 44.2(b), reviewing courts must disregard any error that did not affect the appellant's substantial rights. Tex. R. App. P. 44.2(b); *see Gonzalez*, 544 S.W.3d at

---

[12] The State offered a copy of the discovery log showing what was provided to the defense along with some of the documents referenced in the log. The prosecutor then referred to a page containing a "judgment, sentence and revocation" and another page that was the report of alleged community-supervision violations from the supervision officer. However, as appellant pointed out, those revocation documents related to the revocation of appellant's 1989 misdemeanor DWI, not the 2001 felony DWI revocation. The State directs us to nothing in the record that shows that appellant was given notice of the bad acts reflected in the allegations underlying the 2001 revocation of appellant's 1999 felony DWI community supervision.

373 ("Non-constitutional errors are harmful, and thus require reversal, only if they affect Appellant's substantial rights."); *see also* Tex. R. Evid. 103(a) (error may not be predicated on admission or exclusion of evidence unless substantial right of party affected). "'A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict.'" *Thomas v. State*, 505 S.W.3d 916, 926 (Tex. Crim. App. 2016) (quoting *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)); *see Gonzalez*, 544 S.W.3d at 373; *McDonald*, 179 S.W.3d at 578; *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

In this instance, appellant objected to the admission of the exhibits only based on the lack of notice as to the uncharged misconduct in the revocation allegations. He did not object to the admission on the ground that the evidence of the uncharged misconduct itself was inadmissible. Accordingly, rather than analyze the harm from the substantive evidence of the pen pack or motion to revoke, we look only at the harm that may have been caused by the lack of notice and the effect the lack of notice had on the appellant's ability to mount an adequate defense.[13] *McDonald*, 179 S.W.3d at 578; *see Hernandez v. State*, 176 S.W.3d 821, 825–26 (Tex. Crim. App. 2005) (in conducting harm analysis under Rule 44.2(b) regarding erroneous admission of extraneous-offense evidence, analyzing how State's failure to give notice pursuant to Rule 404(b) affected appellant's ability to prepare for evidence).

Appellant had notice in the indictment that the State intended to use his prior 2001 final felony DWI conviction (the revocation of his 1999 felony DWI community supervision) to

---

[13] In his harm analysis in his brief, appellant fails to address any harm from lack of notice, but instead only alleges harm arising from the substance of the evidence.

enhance the punishment range for both offenses. At the beginning of the punishment phase, appellant pled true to the enhancement allegation regarding his prior felony DWI. During trial, the defense strategy that appellant put forth did not deny his intoxication nor did it deny threatening Officer Greenhill or the ER nurse on the night in question. His strategy during the guilt-innocence phase of trial concerning the retaliation charge was that he did not really mean the threats that he made against the officer (or the nurse)—that is, his threats were "idle threats." His strategy did not assert a specific defense to the felony DWI.

The record reveals that appellant's strategy during the punishment phase was to offer an explanation for his conduct. Appellant's older brother testified that the day before the instant offenses occurred, the family found out that appellant's mother "had two weeks to live."[14] Appellant's counsel asserted during closing argument that appellant suffered from "the disease of alcoholism" and "relapsed" because of "this tragedy," and thus just needed "a reminder" rather than lengthy incarceration.

Appellant failed to make any specific claims of how he was prejudiced or harmed by the lack of notice and how his defense would have been any different had he been given proper notice. On this record, it is difficult to discern how appellant's defense during punishment would have been altered in any meaningful way had he had notice of the underlying bad acts alleged in the revocation. Furthermore, had there been legitimate surprise that required a re-evaluation of trial

---

[14] The brother's testimony reflected that appellant's mother had gallbladder cancer and that the family members who were taking care of her did not disclose how serious her condition was. Only upon her hospitalization, approximately four days before the instant offenses, did the rest of the family discover that "it was worse than had been indicated."

24

strategy, appellant could have requested a continuance. He did not. Given the nature of appellant's strategy regarding punishment, we do not find that appellant's ability to mount an adequate defense was affected by any lack of notice about the bad acts underlying the 2001 revocation of his 1999 felony DWI community supervision as reflected in the penitentiary packet or the motion to revoke. *See McDonald*, 179 S.W.3d at 578–79 (analyzing trial strategy to determine harm from lack of notice). Thus, because notice as to the extraneous misconduct at issue would not have affected the appellant's trial strategy, we conclude that the error did not affect appellant's substantial rights. *See, e.g.*, *id.* We overrule appellant's fourth point of error.

## Speedy Trial

"The Sixth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment, guarantees a speedy trial to an accused." *Balderas v. State*, 517 S.W.3d 756, 767 (Tex. Crim. App. 2016), *cert. denied*, 137 S. Ct. 1207 (2017) (quoting *Gonzales v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014)); *see* U.S. Const. amends. VI, XIV; *see also* Tex. Const. art. I, § 10 (state guarantee of speedy trial). In his fifth point of error, appellant asserts that the trial court erred in denying his motion to dismiss the indictment for lack of a speedy trial.

We analyze a speedy trial claim on an ad hoc basis by applying a fact-specific balancing test. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Henson v. State*, 407 S.W.3d 764, 767 (Tex. Crim. App. 2013). Whether raised under the federal or state constitution, we weigh and balance four factors: the length of the delay, the reason for the delay, the defendant's assertion of

his right, and the prejudice inflicted by the delay.[15]  *Barker*, 407 U.S. at 530; *Henson*, 407 S.W.3d at 767; *see Alba v. State*, No. 03-13-00345-CR, 2014 WL 5802294, at *1 (Tex. App.—Austin Nov. 7, 2014, no pet.) (mem. op., not designated for publication).  No single factor is necessary or sufficient to establish a violation of the right to a speedy trial; instead, we must weigh the conduct of the prosecution and defendant using a balancing test of the four factors.  *Barker*, 407 U.S. at 530, 533; *Cantu v. State*, 253 S.W.3d 273, 281 (Tex. Crim. App. 2008).  The State must satisfy its burden of justifying the length of the delay while the defendant must meet his burden of proving the assertion of the right and showing prejudice.  *Cantu*, 253 S.W.3d at 280.  The four factors are related, and we apply them "with common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed."  *Id.* at 281.

Review of the individual factors necessarily involves fact determinations and legal conclusions, but the balancing test as a whole is a purely legal question.  *Balderas*, 517 S.W.3d at 768; *Cantu*, 253 S.W.3d at 282.  In our review, we apply a bifurcated standard in which we review the trial court's determination of historical facts for an abuse of discretion, but review de novo the court's application of the law to the facts.  *Balderas*, 517 S.W.3d at 768; *Gonzales*, 435 S.W.3d at 808–89; *Cantu*, 253 S.W.3d at 282; *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002).

---

[15]  In raising his speedy trial claim to the trial court, appellant did not specify whether he was asserting his right to a speedy trial under the federal or state constitution.  However, although the right to a speedy trial under the Texas Constitution exists independently of the Sixth Amendment guarantee, claims of denial of the state speedy trial right are analyzed under the same four *Barker* factors.  *Cantu v. State*, 253 S.W.3d 273, 280 n.16 (Tex. Crim. App. 2008); *Harris v. State*, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992).

*Length of Delay*

The length of the delay is the triggering mechanism for an analysis of the *Barker* factors. *Barker*, 407 U.S. at 530; *Zamorano*, 84 S.W.3d at 648. The right to a speedy trial attaches when a person becomes an accused, which is when he is arrested or formally charged. *Henson*, 407 S.W.3d at 767; *Cantu*, 253 S.W.3d at 280; *see United States v. Marion*, 404 U.S. 307, 320 (1971) ("[I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment."). Thus, the length of the delay is measured from the time the defendant is arrested or formally accused. *Barker*, 407 U.S. at 530; *Harris v. State*, 827 S.W.2d 949, 956 (Tex. Crim. App. 1992).

In this case, appellant was arrested on April 4, 2015, and his jury trial began on October 17, 2016, just over 18 months later. "In general, courts deem delay approaching one year to be 'unreasonable enough to trigger the *Barker* enquiry.'" *Balderas*, 517 S.W.3d at 768 (quoting *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003)); *see Doggett v. United States*, 505 U.S. 647, 651–52 (1992). The State does not dispute that the length of the delay in this case was sufficient to trigger the *Barker* enquiry, and we agree that it was.

We must also consider "the extent to which the delay stretches beyond the bare minimum" needed to trigger the enquiry. *Doggett*, 505 U.S. at 652; *Balderas*, 517 S.W.3d at 768; *Dragoo*, 96 S.W.3d at 314. The longer the delay, the more heavily this factor weighs in favor of finding a speedy-trial violation. *See Balderas*, 517 S.W.3d at 768; *Dragoo*, 96 S.W.3d at 314. Moreover, the nature of the charged offense must also be considered. *Zamorano*, 84 S.W.3d at 649;

27

*see Barker*, 407 U.S. at 531 (explaining, for example, that "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge"). Here, there was a delay of just over 18 months between appellant's arrest for the offenses and his trial, which is six months longer than the one-year minimum needed to trigger the *Barker* enquiry. We conclude that the length of the delay in this case weighs against the State.

*Reason for Delay*

Once the length of time is found to be presumptively prejudicial, the burden of justifying the delay falls on the State.[16] *Cantu*, 253 S.W.3d at 280. Different weights are assigned to different reasons for delay. *Barker*, 407 U.S. at 531; *Hopper v. State*, 520 S.W.3d 915, 924 (Tex. Crim. App. 2017); *Balderas*, 517 S.W.3d at 768. A deliberate attempt to delay trial to hamper the defense is weighed heavily against the State. *Barker*, 407 U.S. at 531; *accord Vermont v. Brillon*, 556 U.S. 81, 90 (2009); *Balderas*, 517 S.W.3d at 768; *Zamorano*, 84 S.W.3d at 649. More neutral reasons, such as negligence or crowded dockets, are also weighed against the State, but less heavily than deliberate delay. *Barker*, 407 U.S. at 531; *Hopper*, 520 S.W.3d at 924; *Balderas*, 517 S.W.3d at 768; *Zamorano*, 84 S.W.3d at 649. Valid reasons, such as a missing witness or delay caused by plea negotiations, are not weighed against the State at all. *Barker*, 407 U.S. at 531; *State v. Munoz*,

---

[16] We note that appellant orally moved for dismissal of the indictment for lack of a speedy trial after the State requested a continuance, and the State objected to lack of notice. As a result of the oral motion and lack of notice, the record is somewhat limited. We must keep in mind that "[i]n the absence of an assigned reason for the delay, a court may presume neither a deliberate attempt on the part of the State to prejudice the defense nor a valid reason for the delay." *Balderas v. State*, 517 S.W.3d 756, 768 (Tex. Crim. App. 2016), *cert. denied*, 137 S. Ct. 1207 (2017) (quoting *Dragoo v. State*, 96 S.W.3d 308, 314 (Tex. Crim. App. 2003)).

991 S.W.2d 818, 824 (Tex. Crim. App. 1999); *see Balderas*, 517 S.W.3d at 768; *Dragoo*, 96 S.W.3d at 314. Finally, if an accused's own actions constitute the majority of the reason for the delay in trial, this factor weighs against his speedy trial claim. *Hopper*, 520 S.W.3d at 924; *Balderas*, 517 S.W.3d at 768; *Alba*, 2014 WL 5802294, at *2. Delay that is attributable in whole or in part to the defendant may constitute a waiver of the speedy trial claim. *Munoz*, 991 S.W.2d at 822; *see Barker*, 407 U.S. at 528–30 (delay attributable to defendant constitutes waiver of speedy trial); *Dickey v. Florida*, 398 U.S. 30, 48 (1970) (Brennan, J., concurring) (defendant may be "disentitled to the speedy-trial safeguard in the case of a delay for which he has, or shares, responsibility").

There is no evidence of deliberate delay in this case. Appellant was arrested on April 4, 2015, and was released on bond the following day. Following his arrest, while appellant was out on bond, the initial delay appears to have been the delay in appellant being indicted, which only occurred on November 18, 2015—228 days after appellant's arrest. The record does not address the reason for that delay.[17] The record next reflects that appellant was arrested post-indictment three weeks later on December 8, 2015. Two days after that, appellant's counsel filed a notice of appearance.[18] The record then reflects that appellant filed a waiver of arraignment and a motion to reduce bond on December 14, 2015. Appellant was released on bond the following day on December 15, 2015. The record reflects that the next action taken was that appellant filed

---

[17] Again, we note that, because appellant orally moved for dismissal, the State was not given notice of appellant's speedy-trial claim or an opportunity to prepare a response in advance.

[18] The timing of this notice suggests that appellant waited 250 days—approximately 8 months—after his arrest before obtaining legal counsel.

a pretrial motion to suppress on February 19, 2016. The court conducted a hearing on the motion on April 25, 2016,[19] and denied the motion on May 13, 2016 by letter to the parties.

The case was then set for trial. The discussions concerning the oral motion to dismiss suggest that the case was set for trial either in June or July of 2016. Both parties indicated that this first trial setting was continued on appellant's request when he expressed the need to hire an expert. The next setting, which appears to have been a subsequent trial setting although it appears in the reporter's record as a pretrial setting, was on August 16, 2016. At that setting, the State moved for a continuance because a material witness was unavailable.[20] The trial court indicated that the "resetting [for trial] won't be for a little while"—presumably because of the court's trial docket—"so he'll be back." At that point, appellant orally moved for dismissal of the indictment for lack of speedy trial, which the trial court denied. On October 11, 2016, both sides announced ready for trial. The jury trial began the next week with jury selection on October 17, 2016.

While the almost 18-month delay between arrest and trial is presumptively prejudicial, the record shows that the delay was not due to any deliberately hampering action of the State, but rather due, post-indictment, to pretrial settings in the case, appellant's request for a continuance, and the unavailability of a material witness. Thus, the reason-for-delay factor does not weigh against the State.

---

[19] The record does not reflect that appellant objected to the two-month delay in setting the suppression hearing, which suggests that he acquiesced to it.

[20] The record reflects that the "necessary" witness was out of the country on vacation and scheduled to return on August 29, 2016.

30

*Assertion of Right*

"The defendant has no duty to bring himself to trial; that is the State's duty. But a defendant does have the responsibility to assert his right to a speedy trial." *Cantu*, 253 S.W.3d at 282 (citing *Barker*, 407 U.S. at 527–28); *accord Hopper*, 520 S.W.3d at 924. "Therefore, the defendant's assertion of his speedy-trial right (or his failure to assert it) is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Cantu*, 253 S.W.3d at 283.

Appellant orally sought dismissal of the indictment for lack of speedy trial on August 16, 2016—500 days (more than 16 months) after he was arrested. Prior to that, he never asked for a speedy trial. Although a defendant's failure to assert his speedy trial right does not amount to a waiver of that right, failure to assert the right makes it difficult to prove he was denied a speedy trial. *Barker*, 407 U.S. at 532; *Dragoo*, 96 S.W.3d at 314. A defendant's lack of a timely demand for a speedy trial indicates strongly that he did not really want a speedy trial and that he was not prejudiced by the lack of one. *Dragoo*, 96 S.W.3d at 314; *see Balderas*, 517 S.W.3d at 771. Furthermore, the longer the delay becomes, the more likely it would be that a defendant who wished a speedy trial would take some action to obtain it. *Balderas*, 517 S.W.3d at 771; *Dragoo*, 96 S.W.3d at 314. Thus, inaction weighs more heavily against a violation the longer the delay becomes. *Balderas*, 517 S.W.3d at 771; *Dragoo*, 96 S.W.3d at 314.

Here, appellant did not assert his speedy trial right for over 16 months, and then only after the State requested a continuance. *See Cantu*, 253 S.W.3d at 284 ("Under *Barker*, appellant's failure to diligently and vigorously seek a rapid resolution is entitled to strong evidentiary weight.")

(internal quotation marks omitted). Moreover, even at that point, appellant's objective was to obtain a dismissal not a trial. At no point in the oral motion or during the hearing on the motion did appellant ask for a trial setting. *See, e.g.*, *Barker*, 407 U.S. at 535 (observing that, when defense counsel responded to State's motion for continuance by moving to dismiss indictment, without moving in alternative for immediate trial, "the record strongly suggests that while [appellant] hoped to take advantage of the delay in which he had acquiesced, and thereby obtain a dismissal of the charges, he definitely did not want to be tried"). Further, at the hearing on his motion to dismiss, appellant provided no explanation for why he did not first demand a trial before requesting dismissal of the charges.

Requesting dismissal of the charges, rather than requesting a prompt trial setting, indicates a desire to have no trial instead of a speedy one. *Cantu*, 253 S.W.3d at 283; *see Balderas*, 517 S.W.3d at 771. In addition, because appellant never asked for a speedy trial—he asked only for a dismissal in his oral motion—it was incumbent upon him to show that he had tried to get the case into court so that he could go to trial in a timely manner. *See Cantu*, 253 S.W.3d at 283. He failed to do so. The record reflects that when the case was first set for trial appellant sought a continuance. Appellant's actions were inconsistent with a demand for speedy trial. *See Henson*, 407 S.W.3d at 769; *Shaw v. State*, 117 S.W.3d 883, 890 (Tex. Crim. App. 2003). Accordingly, this factor weighs heavily against appellant and against finding a violation of his right to speedy trial.

*Prejudice Caused by the Delay*

Prejudice is assessed in light of the three interests a speedy trial is designed to protect: (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused;

32

and (3) limiting the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532; *Hopper*, 520 S.W.3d at 924; *Balderas*, 517 S.W.3d at 772. Of these three, the most serious is the last, because the inability of the defendant to prepare a defense skews the fairness of the entire system. *Barker*, 407 U.S. at 532; *Balderas*, 517 S.W.3d at 772; *Gonzales*, 435 S.W.3d. at 812. A defendant has the burden to make some showing of prejudice, although a showing of actual prejudice is not required. *Balderas*, 517 S.W.3d at 772; *Munoz*, 991 S.W.2d at 826.

Here, with regard to the first interest, appellant was arrested on April 4, 2015, and was released on bond the following day. He was again arrested on December 8, 2015, after he was indicted, and released on bond a week later on December 15, 2015. Thus, appellant was out on bond at all relevant times, so he was not prejudiced by pretrial incarceration.

With respect to the second interest, appellant testified that he was stressed "worrying about the court date" and "what the outcome [was] going to be." While the interest the speedy trial right is intended to protect in this regard is to minimize the anxiety and concern accompanying a public accusation, *see Barker*, 407 U.S. at 532; *Henson*, 407 S.W.3d at 766, the claims as asserted in appellant's testimony fail to demonstrate that he suffered anxiety or concern beyond the level normally associated with being charged with a serious felony crime. *See Cantu*, 253 S.W.3d at 286 ("[E]vidence of generalized anxiety, though relevant, is not sufficient proof of prejudice under the *Barker* test, especially when it is no greater anxiety or concern beyond the level normally associated with a criminal charge or investigation." (citing *Shaw*, 117 S.W.3d at 890)). Further, while appellant claimed that the stress of the pending prosecution aggravated a health condition (Meniere's disease), nothing in appellant's testimony established that his health issues arose post-arrest, or were caused

by the 18-month delay in his trial as opposed to the stress and circumstances normally associated with being a defendant in a criminal prosecution. In fact, appellant testified that he was diagnosed with his condition in 2010—five years before his arrest—and had been receiving treatment for it since that time.[21]

Finally, with respect to the third interest, we must presume that the lengthy delay here did adversely affect appellant's ability to defend himself. However, we note that appellant did not claim that his defense was impaired. He did not argue at the hearing that any witnesses were missing or had difficulty recalling the events surrounding the offense. *See, e.g.*, *Barker*, 407 U.S. at 532 (recognizing prejudice to defense "[i]f witnesses die or disappear during a delay" or "if defense witnesses are unable to recall accurately events of the distant past"). Moreover, portions of the crimes in this case were electronically captured.

In short, on this record, the trial court could have reasonably concluded that appellant failed to demonstrate sufficient prejudice. Therefore, this factor weighs against finding a violation of his right to speedy trial.

*Balancing the Factors*

Dismissal of criminal charges is a "radical remedy." *Cantu*, 253 S.W.3d at 281 (citing *Barker*, 407 U.S. at 522); *Green v. State*, No. 03-16-00759-CR, 2017 WL 3902595, at *2 (Tex. App.—Austin Aug. 25, 2017, no pet.) (mem. op., not designated for publication). Therefore, "courts must apply the *Barker* balancing test with common sense and sensitivity to ensure that

---

[21] Appellant also indicated that he suffered from anxiety and depression, but did not establish that these conditions arose after his arrest or were attributable to the delay.

charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed." *Cantu*, 253 S.W.3d at 281 (citing *Barker*, 407 U.S. at 534–35); *accord Balderas*, 517 S.W.3d at 773; *Green*, 2017 WL 3902595, at *2. "The constitutional right is that of a speedy trial, not dismissal of the charges." *Cantu*, 253 S.W.3d at 281.

Balancing all the *Barker* factors, we conclude that appellant was not denied his right to a speedy trial. Weighing in favor of finding a violation of appellant's speedy trial right is the excessive delay. However, while this first factor supports appellant's position, the last three do not. The delay in this case was caused by a combination of valid and neutral reasons (various pretrial proceedings and the unavailability of a material witness) as well as reasons attributable to appellant (his request for continuance). Thus, this factor does not weigh against the State. Weighing against finding a violation of the right is appellant's acquiescence to the delay (he waited more than 16 months before asserting his speedy trial right), his request for continuance, his tardy assertion of the right only after the State requested a continuance, and his request to dismiss the charges against him rather than seeking a trial. Also weighing against finding a violation is appellant's failure to demonstrate prejudice.

Balancing the relative weights of the four factors, we conclude that appellant failed to show that he was entitled to relief for lack of a speedy trial. We therefore hold the trial court did not err in denying appellant's motion to dismiss the indictment based on a speedy trial violation. We overrule appellant's fifth point of error.

## Error in Retaliation Judgment

In his final point of error, appellant complains about error in the written judgment of conviction for retaliation in Count II regarding the sentence imposed. Appellant notes that the judgment of conviction states that the "Punishment and Place of Confinement" is "TWENTY (10) YEARS CONFINEMENT IN THE INSTITUTIONAL DIVISION OF THE TEXAS DEPARTMENT OF CRIMINAL JUSTICE AND A $4,000 FINE." The record reflects that the jury assessed a term of imprisonment of ten years, and the trial court orally imposed a ten-year sentence in accordance with that verdict. Thus, we agree with appellant that the written number "twenty" is a clerical error, and sustain his sixth point of error.[22]

In reviewing the retaliation judgment to address appellant's sixth point of error, we observe that the judgment for Count II contains further clerical error. The judgment states that the "Statute for Offense" is "36.06(c) / 12.42(a) Penal Code." Section 36.06(c) is the statutory provision that establishes that the offense of retaliation is, generally, a third degree felony. However, the statutory provision that defines the offense of retaliation is section 36.06(a) of the Penal Code.

This Court has authority to modify incorrect judgments when the necessary information is available to do so. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Accordingly, we modify the judgment of conviction for retaliation in

---

[22] The State agrees that the judgment for retaliation is erroneous and should be reformed to reflect a ten-year sentence on that count.

Count II to reflect that the punishment assessed for the retaliation offense is "TEN (10) YEARS" confinement and to reflect that the "Statute for Offense" is "36.06(a) / 12.42(a) Penal Code."[23]

## CONCLUSION

Having concluded that the trial court did not abuse its discretion in denying appellant's motion to suppress, that the trial court did not err in refusing to include appellant's requested instruction in the jury charge, that the erroneous admission of the exhibits containing references to the bad acts underlying the 2001 revocation of appellant's 1999 felony DWI community supervision did not affect appellant's substantial rights, and that the trial court did not err in denying appellant's motion to dismiss for lack of speedy trial, we affirm the trial court's judgment of conviction for felony DWI in Count I. Having concluded that the trial court's judgment of conviction for retaliation in Count II contains non-reversible clerical error, we modify that judgment as noted above and, as modified, affirm the trial court's judgment of conviction for retaliation in Count II.

---

[23] Section 12.42(a) of the Penal Code is the repeat offender provision of the Penal Code that provides that, at the trial of third degree felony offense, the defendant shall be punished for second degree felony upon proof of a previous felony conviction. That enhancement provision applies here so we retain that statutory reference.

_____

Cindy Olson Bourland, Justice

Before Chief Justice Rose, Justices Puryear and Bourland

Count I:        Affirmed

Count II:       Modified and, as Modified, Affirmed

Filed:   October 25, 2018

Do Not Publish