**Opinion filed November 30, 2020**



In The

# Eleventh Court of Appeals

_____

## No. 11-18-00325-CR

_____

**JAY DARDEN LOVING, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 2**
**Taylor County, Texas**
**Trial Court Cause No. 2-958-17**

### O P I N I O N

The jury convicted Jay Darden Loving of unauthorized employment of an unlicensed person, a criminal offense contained within the Private Security Act. *See* TEX. OCC. CODE ANN. § 1702.386(a) (West Supp. 2020), § 1702.001 (West 2012). The Act contains licensing requirements for installing alarm systems and electronic access control devices. OCC. § 1702.221. The trial court assessed Appellant's punishment at confinement in the Taylor County Jail for one year, but the trial court

suspended the imposition of the sentence and placed Appellant on community supervision for one year. In two issues on appeal, Appellant asserts that (1) the evidence was insufficient to support his conviction and (2) the jury charge contained an error that egregiously harmed him. We affirm.

*Background Facts*

Appellant worked for Entec Solutions LLC, an alarm systems installation company based in Lubbock. Appellant was the senior technician for Entec in Abilene. As part of his responsibilities as senior technician, Appellant interviewed job candidates to work in Abilene for Entec to go out to job sites and install alarm systems. Appellant testified that a major part of his job for Entec was to oversee the installation of camera equipment and access control equipment for the Abilene Independent School District.

Spencer Bell testified that Appellant interviewed and hired him in November 2016. That same month, Bell provided Appellant with his application to be a licensed alarm systems installer. Appellant sent Bell's license application to the Entec staff in Lubbock for them to file. Almost immediately after hiring Bell, Appellant sent Bell to several security installation jobs, including security installations at Ortiz Elementary School and Abilene High School. During that time, Bell had not yet received his alarm systems installer license.

Jason Graham is an investigator with the Texas Department of Public Safety. He was contacted by the Abilene Police Department regarding possible licensing violations at Entec's Abilene office. Agent Graham testified that one of Entec's employees was a suspect in a theft that occurred at Ortiz Elementary School in Abilene. Agent Graham interviewed Appellant and discovered that Appellant sent Bell to job sites where Bell performed alarm installation work without an alarm systems installer license.

2

*Analysis*

In his first issue, Appellant contends that there was insufficient evidence to establish that Appellant employed an unlicensed person. We review a challenge to the sufficiency of the evidence under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we consider all the evidence submitted at trial, including pieces of evidence that the trial court may have improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 788.

We measure the sufficiency of the evidence by the elements of the offense as defined in a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*. The Texas Occupations Code provides that a person

commits the offense of "unauthorized employment" "if the person contracts with or employs a person who is required to hold a license or commission under this chapter knowing that the person does not hold the required license or commission or who otherwise, at the time of contract or employment, is in violation of this chapter." OCC. § 1702.386(a).

The information charged Appellant in the following manner:

> [O]n or about the 9th day of June, 2017, in Taylor County, Texas, [Appellant] did then and there intentionally and knowingly employ or contract with Spencer Thomas Bell to perform the services of an alarm company and engage in business activity for which a license is required, to-wit: was employed or contracted as an alarm service technician to perform a regulated service of installing, servicing, and repairing alarms for Entec Solutions, knowing that a license is required under Texas Occupations Code Chapter 1702, when the said Spencer Thomas Bell did not hold a license, registration, certificate, or commission under the Texas Occupations Code or who otherwise, at the time of contract or employment, was in violation of this chapter.

Appellant asserts that the State's evidence was insufficient to show that he was Bell's employer for the purposes of Section 1702.386. Appellant also contends that the evidence was insufficient to show that he knew that Bell lacked an alarm systems installer license on June 9, 2017. We disagree with both contentions.

Appellant contends that he lacked the authority to be an employer and that he did not make the decision to hire Bell. Appellant essentially takes the position that someone higher up the chain-of-command at Entec was Bell's employer or that Entec was Bell's employer. Appellant contends that it is "irrational to impute 'employer' status to an employee who lacks at least the power to hire and fire without having to go up the hierarchy for approval."

The State called two witnesses at trial: Bell and Agent Graham. Bell testified that, after he interviewed with Appellant in November 2016, Appellant hired him

that same day and almost immediately sent him out on jobs. Bell testified that Appellant gave him jobs having to do with installing alarm systems. Bell stated that Appellant was his supervisor and that Appellant had him installing security cameras even though Bell did not have an alarm systems installer license. When asked on cross-examination about who hired him, Bell testified, "I believe the final decision on if they wanted me was up to [Appellant]."

Agent Graham testified that Bell was "doing things or activities that would require an alarm system installer license" when Bell did not have the required license. Agent Graham further testified that Appellant was "their boss, their employer, he's the one that hired them, and he's the one that's in charge of firing them." Agent Graham interviewed Appellant on June 15, 2017. Agent Graham testified that Appellant told him that Bell "did not have a license, that they were in the process of, uh, applying for it, but he did not have the license." Agent Graham further testified that Appellant had hired Bell because Appellant "had lost the other guys that were previously employed to him and he had to fire them for various reasons."

A recording of Agent Graham's interview of Appellant was admitted at trial. During the interview, Agent Graham explained that Bell could not pull cable for installations by himself without the appropriate license. Appellant discussed during the interview that he had fired some guys working for him and that he hired Bell as a "helper." Agent Graham opined during the interview that Appellant was employing Bell without a license in violation of the law. When Appellant stated that Entec was Bell's employer, Agent Graham disagreed by saying that Appellant was Bell's supervisor and that Appellant managed Bell and directed where Bell would work each day.

Appellant testified on his own behalf during the guilt/innocence phase. He stated that Entec needed to hire more people in Abilene, so the company put him in charge of interviewing people and "giv[ing] [his] recommendation" as to whom Entec should hire. However, Appellant stated that his authority to hire and fire employees was not final, and a supervisor at Entec's Lubbock office could overrule his decision. On cross-examination, the State asked Appellant what work Bell would do when Appellant sent Bell out to job sites, and Appellant admitted that Bell would pull cable, install cameras, and fish wires down the walls.

Appellant places a great deal of emphasis on the meaning of "employs" as it is used in the statute. When evidentiary sufficiency turns on the meaning of a statute, we must resort to statutory interpretation, which is a question of law that we review de novo. *Lopez v. State*, 600 S.W.3d 43, 45 (Tex. Crim. App. 2020). "Statutory construction depends on the plain meaning of the statute's language unless it is ambiguous or the plain meaning would lead to absurd results that the legislature could not have possibly intended." *Id.* To determine plain meaning, we read the statute in context and give effect to each word, phrase, clause, and sentence if reasonably possible, and we construe them "according to any applicable technical definitions and otherwise according to the rules of grammar and common usage." *Id.* If the plain meaning is not ambiguous and does not lead to absurd results, we do not consider extratextual factors. *Id.*

The word "employs" is not defined by the statute. OCC. § 1702.386(a); *see* OCC. § 1702.002. Accordingly, the term must be interpreted according to its common usage. *See Stahmann v. State*, 602 S.W.3d 573, 578 (Tex. Crim. App. 2020); *Williams v. State*, 270 S.W.3d 140, 146 (Tex. Crim. App. 2008). Merriam-Webster's Collegiate Dictionary defines "employ" in part as "**1 a**: to make use of **b**: to use advantageously **c** (1): to use or engage the services of (2): to provide with

a job that pays wages or a salary." *Employ*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2004) (parentheticals omitted). Black's Law Dictionary defines "employ" in a similar manner: "**1.** To make use of. **2.** To hire. **3.** To use as an agent or substitute in transacting business. **4.** To commission and entrust with the performance of certain acts or functions or with the management of one's affairs." *Employ*, BLACK'S LAW DICTIONARY (10th ed. 2014).

The evidence shows that Appellant employed Bell as the term is commonly used and defined. Appellant testified as follows about the decision to hire Bell:

 [W]e were very shorthanded at the time, um, and Lynn,[1] um -- Lynn had actually instructed me to hire more people. Um, so I already had Canton Bell working for me. He talked to me about his brother.[2] Um, so I already had prior authorization to hire someone from Lubbock. Um, I talked to his brother, interviewed him, um, and told him that pending -- you know, that pending him passing background checks and -- and everything, that he would -- you know, that I would give him the job.

We disagree with Appellant's contention that only someone with authority over him should be considered to be the person that employed Bell. The statute does not restrict culpability to only one person. Appellant had permission to hire someone because he had fired a person that worked for Entec in the Abilene office. Appellant then hired Bell to fill the position, and Appellant was the one that directed the work that Bell performed.

With respect to the date of June 9, 2017, Appellant asserts that it was reasonable for him to have assumed that Bell had a license by that date. "It is well settled that the 'on or about' language of [a charging instrument] allows the state to prove a date other than the one alleged as long as the date proven is anterior to the

---

[1]"Lynn" is the owner of Entec.

[2]"Brother," as used by Appellant, is Spencer Bell.

presentment of the indictment and within the statutory limitation period." *Wright v. State*, 28 S.W.3d 526, 532 (Tex. Crim. App. 2000). The statutory limitation period for a Class A misdemeanor is two years. TEX. CODE CRIM. PROC. ANN. art 12.02(a) (West 2015). The information charging Appellant with an offense was filed on October 26, 2017. As we have noted, Appellant hired Bell in November 2016, a date which is less than two years prior to the date of the information. The evidence shows that Bell did not have the required licenses when Appellant hired him. Furthermore, Appellant assigned Bell tasks requiring a license almost as soon as Bell started to work for Entec.

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational jury could have found beyond a reasonable doubt the essential elements of the offense of unauthorized employment of an unlicensed person as the offense is set out in Section 1702.386. *See Jackson*, 443 U.S. at 319. We overrule Appellant's first issue.

In his second issue, Appellant contends that the trial court erroneously defined "employer" in the jury charge. He asserts that the trial court defined the term too broadly and that it caused him egregious harm. A review of alleged jury-charge error involves a two-step analysis. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005); *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994). We must first determine whether the charge contained any actual error. *Ngo*, 175 S.W.3d at 743–44; *Abdnor*, 871 S.W.2d at 731–32. If there was actual error, we must next determine whether the error resulted in sufficient harm to require reversal. *Ngo*, 175 S.W.3d at 743–44; *Abdnor*, 871 S.W.2d at 731–32. If an appellant fails to object to or present a properly requested jury charge, any error in the charge "should be reviewed only for 'egregious harm' under *Almanza*."

8

*Madden v. State*, 242 S.W.3d 504, 513 (Tex. Crim. App. 2007); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).

Under Article 36.14, the trial court is required to give the jury a written charge "setting forth the law applicable to the case." CRIM. PROC. art. 36.14 (West 2007). "As a general matter, definitions for terms that are not statutorily defined are not considered to be the 'applicable law' under Article 36.14, and it is thus generally impermissible for the trial court to define those terms in the jury instructions." *Green v. State*, 476 S.W.3d 440, 445 (Tex. Crim. App. 2015). As noted previously, the term "employs" is not defined in the Private Security Act. Furthermore, the term "employer" is not contained in Section 1702.386 of the statute. Accordingly, we will assume for the purpose of our analysis that the trial court erred by providing a definition of employer.

Appellant did not object to the jury charge.[3] Accordingly, reversal is required only if the error results in egregious harm. *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015). "Charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Id.* "Egregious harm is a 'high and difficult standard' to meet, and such a determination must be 'borne out by the trial record.'" *Id.* (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)). "An egregious harm determination must be based on a finding of actual rather than theoretical harm." *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015) (quoting *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011)).

Egregious harm is only shown when the error "created such harm that [the appellant] 'has not had a fair and impartial trial.'" *Almanza*, 686 S.W.2d at 171. In

---

[3]The record reflects that one of the parties requested the definition of employer that the trial court used. However, the record does not reflect which party requested it.

*Almanza*, the Texas Court of Criminal Appeals outlined four factors that a reviewing court should consider when determining whether a jury-charge error resulted in egregious harm: (1) the charge itself; (2) the state of the evidence, including contested issues and the weight of the probative evidence; (3) arguments of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *Villareal*, 453 S.W.3d at 433.

The trial court used the following definition: "'Employer' means a person who: (A) Employs one or more employees; or (B) Acts directly or indirectly in the interests of an employer in relation to an employee." As noted by the State, this definition of "employer" is set out in Section 61.001(4) of the Labor Code. *See* TEX. LAB. CODE ANN. § 61.001(4) (West Supp. 2020). This statutory definition is included in the statutes that regulate the payment of wages. *See id.* Appellant focuses his challenge on the second portion of the definition that provides that an employer is someone that "acts directly or indirectly in the interests of an employer." He contends that this provision is "absurdly broad" to the extent that it would permit a janitor to be considered an employer if he or she mopped the floor of the interview room prior to a person being hired or a secretary that delivered a message from her boss to a job candidate that he or she had been hired.

Based on the evidence offered at trial, we conclude that Appellant was not egregiously harmed by the definition used by the trial court. The evidence established that Appellant violated the unauthorized employment statute by hiring Bell, thereby employing him. *See* OCC. § 1702.386(a). Thus, Appellant's references to a janitor or a secretary address theoretical harm rather than actual harm. Accordingly, the record does not reflect that Appellant was egregiously harmed by the definition of employer that the trial court used in the court's charge. We overrule Appellant's second issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


November 30, 2020

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[4]

Willson, J., not participating.

---

[4]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.