

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0738-14

**JOSEPH LESTER GREEN, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTH COURT OF APPEALS
### MEDINA COUNTY

ALCALA, J., delivered the opinion of the Court in which KELLER, P.J., MEYERS, JOHNSON, KEASLER, YEARY, and NEWELL, JJ., joined. RICHARDSON, J., filed a dissenting opinion in which HERVEY, J., joined.

### O P I N I O N

In this opinion, we review the holding of the court of appeals reversing the conviction of Joseph Lester Green, appellant, for aggravated sexual assault of a child based on its conclusion that the trial court's instructions to the jury were erroneous and harmful to appellant. *See Green v. State*, 434 S.W.3d 734, 741 (Tex. App.—San Antonio 2014); TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i) (West 2014). The State's sole ground in its petition

for discretionary review asserts that the "court of appeals erred in holding that, by defining the terms 'penetration' and 'female sexual organ' in the instructions to the jury at the conclusion of the evidentiary portion of the guilt phase of the trial, the trial court committed reversible error." Although we agree with the court of appeals's error analysis in that the trial court should not have defined those terms that are undefined in the applicable statute, we disagree that appellant was harmed by the erroneous instructions. We, therefore, sustain in part the State's sole ground that asserts that the court of appeals erred by finding reversible error in the jury instructions. We reverse the judgment of the court of appeals and remand this case to that court to address appellant's remaining points of error.

## I. Background

After the complainant's father, appellant, was released from prison, the complainant, who was raised by her grandparents, began to have overnight visits with him. At first, appellant slept on the sofa while the complainant slept in his bed, but later, appellant began sleeping in the same bed with her. During her last visit with him, the complainant, who was twelve years old at the time, awoke to find appellant's hand underneath her clothes and touching her genital area and breast. The complainant started crying, got up, turned on the light, and demanded that appellant take her home. When appellant asked her what was wrong, the complainant told him that she was upset "because he touched her." In response to that, appellant said, "Well, I can go to jail for this serious accusation." After appellant took her home, the complainant immediately reported the touching to a family member. The

next day, the complainant's grandparents notified the police, and the complainant was taken to the hospital for a sexual-assault examination, which did not reveal any physical trauma.

At appellant's trial for aggravated sexual assault, the complainant specifically testified about how appellant touched her. She said that his hand was inside her shorts, that his hand rubbed the lips of her vagina, and that his hand went "in between them." The prosecutor handed the complainant a picture and asked her to draw how appellant had touched her. The complainant drew a "circular pattern." She also showed on the picture that she understood what the lips of the vagina were and confirmed that appellant had touched her "in between that area." The complainant acknowledged that, previously, when she was asked by the CPS worker and sexual assault nurse examiner whether she had been penetrated, she had answered "No," explaining that "nothing went in" her and that it "was just on the outside touching." On cross-examination by defense counsel, she was specifically asked about the inconsistencies in her prior statements regarding penetration. Counsel then asked, "So as we sit here today is it your testimony then that your dad did not penetrate you?" She responded, "You're correct." She explained that she believed that penetration means "like insertion," "to insert something," or "like [ ] anything that passed my skin or anything."

Deputy Adam Hernandez with the Bexar County Sheriff's Office testified that he was the patrolman who initially responded to investigate this case. He stated that, in his interview of the complainant, she told him that appellant's "hand [was] inside her panties touching her vagina," but she never told him that appellant penetrated or went inside her vagina. The

deputy testified that he explained to the complainant what penetration meant by stating,

> I told her, "This is your wall of your private area." And I go, "This is penetration. This is around here." She told me he just went around the vagina. That's what she explained to me, and that's the way I understood it.

Deputy Hernandez further testified that the complainant said that appellant's finger went "around the wall," indicating that the "wall is the vagina." He further stated, "She said he tried sticking it in there but I don't know if he probably couldn't do it or something."

Sergeant Jack Gonzalez with the Medina County Sheriff's Office conducted the follow-up investigation. He testified that he was present in another room watching on a closed-circuit television while a forensic interviewer questioned the complainant. According to Sergeant Gonzalez, the complainant said that appellant's hand was under her panties touching her "cooch," which he understood to mean her vagina. He further recalled that the complainant said that appellant tried to "stick a finger into her vagina." Sergeant Gonzalez indicated that penetration of the female sexual organ includes having a finger between the lips of the vagina, but it does not necessarily require insertion into the vaginal canal. He explained that he initially charged appellant with indecency with a child by contact rather than aggravated sexual assault of a child because he felt more certain as to appellant's guilt of that offense.

Cynthia Garcia was the sexual assault nurse examiner who examined the complainant and determined that no evidence of physical trauma existed. Garcia's report included quotes from her questions to the complainant and the complainant's responses. Garcia asked, "So

did his finger go inside past the lip part?" The complainant responded, "No." Garcia explained that she was referencing the "labia majora" when she used the term "lip part" and that "it's the outer part of the genital area." She acknowledged that she did not ask the complainant if anything went in between the lips and asked only if anything "went inside" or "past." She also did not give any further explanation or demonstrations about what penetration of the female sexual organ meant, but indicated that, if the complainant had said that "it went between the labia majora," that would "be considered penetration."

In his testimony, appellant denied any sexual touching of the complainant. Appellant suggested that he was asleep and awoke to find the complainant crying as she claimed that she had a "bad dream" that he had touched her. According to appellant, the complainant then told him, "Dad you were touching me for real." Appellant asked her, "What are you talking about? What do you mean that I was touching you?" The complainant responded by saying that she "just wanted to go home." Appellant then took the complainant back to her grandparents' house. Appellant denied touching the complainant's genital area or breasts, and he suggested that the complainant had fabricated the incident.

After the conclusion of the evidence portion of the trial, the trial court discussed the State's request that definitions for "penetration" and "female sexual organ" be included in the jury instructions. Appellant's counsel objected that any such instructions would constitute an improper comment on the weight of the evidence and were unauthorized by the Code of Criminal Procedure. Counsel also objected to the substance of the trial court's

definition for "female sexual organ," explaining that the definition would be "highly confusing and highly misleading" to the jury because it was based on medical definitions, whereas the statutory language had left the term undefined. After overruling defense counsel's objections, the trial court included the State's requested instructions. The trial court defined the meaning of the phrase "penetration of the female sexual organ" in the context of the aggravated-sexual-assault statute.[1] The trial court defined the word "penetration," as something that "occurs so long as contact with the female sexual organ could reasonably be regarded by ordinary English speakers as more intrusive than contact with the outer vaginal lips and is complete, however slight, if any[,]" and the instructions specified that "[t]ouching beneath the fold of the external genitalia amounts to penetration within the meaning of the aggravated sexual assault statute." Similarly, the trial court defined the term "female sexual organ," as meaning "the entire female genitalia, including both vagina and the vulva," and the instructions specified that "'[v]ulva' is defined as the external parts of the female sexual organs, including the labia majora, the labia minora, mons veneris, clitoris, perineum, and the vestibule or entrance to the vagina." The jury found appellant guilty, and the trial court sentenced him to twenty-four years in prison.

On appeal, the court of appeals reversed appellant's conviction on the basis that the terms should have been left undefined, as in the Texas Penal Code, and the jury should have been permitted to construe the terms according to the rules of grammar and common usage.

---

[1] *See* TEX. PENAL CODE § 22.021(a)(1)(B)(i).

*See Green*, 434 S.W.3d at 737-39.  Relying primarily on this Court's precedent in *Kirsch v. State*, the court of appeals held that the inclusion of the challenged instructions constituted an improper comment on the weight of the evidence by "focus[ing] the jury's attention on the specific type of evidence that would support a finding of the contested element of penetration" of the female sexual organ.  *Id*. at 737-38 (citing *Kirsch v. State*, 357 S.W.3d 645, 652 (Tex. Crim. App. 2012)).  Noting that appellant had preserved his complaint about the jury instructions, the court of appeals held that he suffered some harm from the error.  *Id*. at 739.

## II. Analysis

Although we agree with the court of appeals that the trial court erred by including definitions for the terms "penetration" and "female sexual organ" in its instructions to the jury, we disagree that appellant was harmed by the error.  We explain each of these conclusions in turn below.

### A. Trial Court Erred By Providing Definitions for Terms

The Code of Criminal Procedure requires that instructions to the jury be limited to setting forth the law applicable to the case and that they not express any opinion as to the weight of the evidence.  *See* TEX. CODE CRIM. PROC. art. 36.14.  Under Article 36.14, the trial court is required to give the jury a written charge "setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in [its] charge calculated to arouse the

sympathy or excite the passions of the jury." *Id.*

As a general matter, definitions for terms that are not statutorily defined are not considered to be the "applicable law" under Article 36.14, and it is thus generally impermissible for the trial court to define those terms in the jury instructions. *See Kirsch*, 357 S.W.3d at 651 (citing *Walters v. State*, 247 S.W.3d 204, 214 (Tex. Crim. App. 2007)); *Celis v. State*, 416 S.W.3d 419, 433 (Tex. Crim. App. 2013) (plurality op.) ("Non-statutory instructions, even when they are neutral and relate to statutory offenses or defenses, generally have no place in the charge."); *Walters*, 247 S.W.3d at 214 ("Normally, if the instruction is not derived from the code, it is not 'applicable law.'"). Consistent with the terms of Article 36.14, we have explained that jurors should be permitted to "freely read [undefined] statutory language to have any meaning which is acceptable in common parlance." *Kirsch*, 357 S.W.3d at 650 (alteration in original) (quoting *Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995)); *see also Medford v. State*, 13 S.W.3d 769, 771-72 (Tex. Crim. App. 2000) (explaining that "terms not legislatively defined are typically to be understood as ordinary usage allows, and jurors may thus give them any meaning which is acceptable in common parlance").

On the other hand, although it is generally impermissible to instruct on the meanings of terms that are not statutorily defined, an exception to that general rule exists for "'terms which have a known and established legal meaning, or which have acquired a peculiar and appropriate meaning in the law, as where the words used have a well-known common law

meaning.'" *Kirsch*, 357 S.W.3d at 650 (quoting *Medford*, 13 S.W.3d at 772). Such terms are "considered as having been used in their technical sense," and, therefore, it is not error for the trial court to include in its instructions "a precise, uniform definition" to guide the jury's deliberations. *Medford*, 13 S.W.3d at 772.

In assessing the propriety of the non-statutory instructions in this case, the court of appeals held that the terms "penetration" and "female sexual organ" are common terms that have not acquired a technical meaning, and it thus reasoned that those terms are to be interpreted by the jury according to common usage. *Green*, 434 S.W.3d at 738. We agree with this analysis. Consistent with this Court's reasoning in *Kirsch*, we conclude that the jury was free to assign those terms any meaning that is acceptable in common parlance, and the trial court's provision of non-statutory definitions instructing the jury to apply particular definitions was improper. *See Kirsch*, 357 S.W.3d at 652. Furthermore, in response to the State's suggestion that the terms have acquired particular legal meanings in cases addressing the sufficiency of the evidence, we observe that, "[a]lthough an appellate court may articulate a definition of a statutorily undefined, common term in assessing the sufficiency of the evidence . . . a trial court's inclusion of that definition in a jury charge may constitute an improper comment on the weight of the evidence." *Id*. at 651. Having found no persuasive authority to establish that the terms have acquired technical or particular legal meanings that would apply in this context, we hold that the court of appeals correctly concluded that the trial court's instructions in this case were erroneous.

**B. Appellant Was Not Harmed By the Error in the Charge**

After finding error, the court of appeals noted that appellant had objected to the inclusion of the challenged instructions, and it determined that the erroneous instructions had caused him "some harm." *Green*, 434 S.W.3d at 738-39. In conducting its harm analysis, the court of appeals explained that "there was conflicting testimony on the critical, and hotly contested, question of whether [appellant] touched [the complainant's] female sexual organ only on the 'outside' or whether he touched her 'beneath the fold of the external genitalia' amounting to penetration of the female sexual organ." *Id*. at 738. It further observed that this "issue of whether penetration occurred—a question of fact for the jury to resolve—was the focus of counsel's questioning of the witnesses and closing arguments." *Id.* Viewing the erroneous instructions in the context of the entire jury charge, the court noted that the type of error at issue—impinging on the jury's fact-finding authority by focusing its attention on a particular type of evidence—was an additional factor weighing in favor of a finding of harm. *Id.* Based on this analysis, the court of appeals explained that it could not say with fair assurance that the error did not have an injurious effect or influence in determining the jury's verdict, and it concluded that appellant's conviction must be reversed. *Id*. at 738-39 (citing *Trevino v. State*, 100 S.W.3d 232, 243 (Tex. Crim. App. 2003)).

Although we disagree with its application of the standard to the facts of this case, we agree with the court of appeals that the "some harm" standard is appropriate in light of the fact that appellant preserved his charge-error complaint. *Almanza v. State*, 686 S.W.2d 157,

170 (Tex. Crim. App. 1985) (if error in the charge was the subject of a timely objection in the trial court, "then reversal is required if the error is calculated to injure the rights of the defendant, which means no more than that there must be *some* harm"). In reaching our conclusion that appellant was not harmed, we consider (1) the jury charge as a whole; (2) the arguments of counsel; and (3) the entirety of the evidence and any other relevant factors present in the record. *Id*. at 171.

**1. The Jury Charge as a Whole**

In considering the jury charge as a whole, we conclude that this factor weighs against a finding of harm. We explain below that, although the definitions of the terms were extraneous, they accurately described the common meanings of the terms. Furthermore, to the extent that they might have drawn the jury's attention to particular evidence, the definitions did not harm appellant because, as an element of the offense, the jury's attention would already have been focused on the meaning of the phrase "penetration of the sexual organ," and the instructions thus could not have harmfully impacted appellant on that basis.

The trial court defined the meaning of the phrase "penetration of the female sexual organ" in the context of the aggravated-sexual-assault statute. The trial court provided the following instruction on "penetration":

> One of the elements in this case is "penetration." You are instructed that penetration occurs so long as contact with the female sexual organ could reasonably be regarded by ordinary English speakers as more intrusive than contact with the outer vaginal lips and is complete, however slight, if any. Touching beneath the fold of the external genitalia amounts to penetration within the meaning of the aggravated sexual assault statute.

Additionally, the trial court defined "female sexual organ" as follows:

> The term "female sexual organ" means the entire female genitalia, including both vagina and the vulva. Vulva is defined as the external parts of the female sexual organs, including the labia majora, the labia minora, mons veneris, clitoris, perineum, and the vestibule or entrance to the vagina.

The trial court's instructions were consistent with this Court's descriptions of the common meaning of the phrase "penetration of the female sexual organ" in *Vernon v. State*, 841 S.W.2d 407, 409-10 (Tex. Crim. App. 1992). In *Vernon*, this Court addressed what would constitute penetration of the female sexual organ in the context of assessing the sufficiency of the evidence to sustain a conviction for aggravated sexual assault. *Id*. at 409. It began by observing that "[w]ords not specifically defined by the Legislature are to be understood as ordinary usage allows, and jurors may thus freely read statutory language to have any meaning which is acceptable in common parlance." *Id.* Applying that concept to the terms in the aggravated-sexual-assault statute, the Court stated that "'penetrate' may mean 'to enter into' or 'to pass through.'" *Id*. (quoting *Webster's Third New International Dictionary*, p. 1670 (Merriam-Webster 1981)). It continued,

> Thus, in common parlance, mere contact with the outside of an object does not amount to a penetration of it. But pushing aside and reaching beneath a natural fold of skin into an area of the body not usually exposed to view, even in nakedness, is a significant intrusion beyond mere external contact. Consequently, it is not ungrammatical to describe Appellant's touching of complainant in this case as a penetration, so long as contact with the injured part of her anatomy could reasonably be regarded by ordinary English speakers as more intrusive than contact with her outer vaginal lips. For this reason, we think that the phrase "penetration of the . . . female sexual organ" is fairly susceptible of an understanding which includes the kind of touching proven in this case.

*Id.* at 409-10.[2]  The Court's analysis in *Vernon* indicates that the trial court's definitions in this case conformed to the common meanings of the terms "penetration" and "female sexual organ."  *See id.*  As such, the instructions are "mild, neutral," and describe "an obvious common-sense proposition," and thus they would not have impinged on the jury's fact-finding authority.  *Brown v. State*, 122 S.W.3d 794, 803 (Tex. Crim. App. 2003).

Furthermore, we disagree with the court of appeals that the trial court's instructions impinged upon the jury's fact-finding authority by focusing its attention on a particular type of evidence.  Because penetration of the complainant's sexual organ was a critical element of the offense, the jury was already focused on the evidence pertaining to penetration.  The totality of the record shows that the jury's focus would have been on this element of the offense regardless of the inclusion of the definitions, which were accurate under the law and did not function to draw additional or undue attention to any particular evidence that might weigh in favor of or against a finding of guilt.  In this sense, this case is analogous to *Brown*, in which we concluded that, although the trial court's instruction that "intent or knowledge may be inferred by acts done or words spoken" constituted an improper comment on the weight of the evidence, the error was harmless in light of the "benign" nature of the instruction.  *Id.* at 803-04.  In *Brown*, we reasoned that, although it was a disputed issue at his trial for capital murder, Brown's intent was already the focus of the jury's deliberations

---

[2]Although the aggravated-sexual-assault statute now refers to the "sexual organ" rather than the "female sexual organ," this Court has continued to refer to the "female sexual organ" when the complainant is a female.  *See Arrington v. State*, 451 S.W.3d 834, 836-38 (Tex. Crim. App. 2015); *Steadman v. State*, 280 S.W.3d 242, 248 (Tex. Crim. App. 2009).

and, therefore, "[t]he jury did not need any judicial instruction to focus its attention" on that matter. *Id*. at 803 (observing that the "advocates focused the jury's attention quite competently on the disputed issue," and thus the improper comment "was not, in any sense, harmful"). Here, similarly, given that the extraneous instructions were neutral and benign in the sense that they merely described the common meanings of the terms, and given that the jury already would have been focused on the evidence of penetration in light of the fact that it was an element of the offense, we do not find that the erroneous instructions themselves weigh in favor of a finding of harm.

As further support for our conclusion that the trial court's instructions were consistent with the accurate and common meaning of the phrase "penetration of the female sexual organ," we note that the testimony from a police officer and SANE nurse each used these definitions. In questioning Sergeant Gonzalez, the State asked whether it would constitute penetration for appellant to place his finger "between the lips" of the complainant's female sexual organ, to which Sergeant Gonzalez answered, "Yes." The State then asked, "Is there a requirement that there be an insertion into the vaginal canal?" Sergeant Gonzalez answered, "No." Later, in questioning Nurse Garcia, the State similarly asked, "And you being a SANE nurse, if a child had said, 'Yes, it went between the labia majora,' would that be considered penetration?" Nurse Garcia answered, "Yes." In closing arguments, the State, addressing the evidence on penetration, said,

> [Appellant] didn't go all the way inside her. He doesn't have to. To meet the
> elements of an aggravated sexual assault of a child he doesn't have to go all

the way inside her. When you think of the word 'penetration,' you think all the way inside. That was [the complainant's] understanding. He didn't go all the way inside. He went between her labia majora[.]

Because the instructions were largely redundant of the information that was already before the jury through these witnesses and the State's argument, we conclude that this is an additional consideration that weighs against a finding of harm. *See Brown*, 122 S.W.3d at 803 (concluding that erroneous instruction by trial court commenting on the weight of the evidence was harmless; jury was already focused on "disputed issue" of defendant's intent in light of the arguments of counsel, which had used "exactly the same language as in the jury charge to prove [their] point"). Although we recognize that the complainant and other witnesses had their own subjective definitions for penetration, we cannot conclude that those inaccurate definitions would be a basis for finding harm in this case, in which the definitions were immaterial to appellant's defensive theory that no inappropriate touching of any kind occurred.

In addition, the trial court's admonition to the jury to disregard any instruction that might seem to indicate the judge's opinion about the evidence or verdict weighs against a finding of harm in this case. The court's charge contained language instructing the jury that it was

the exclusive judge[ ] of the facts proved, of the credibility of the witnesses and of the weight to be given the testimony[,] but the law of the case you must receive from the Court as contained in these instructions, and be governed thereby. You must disregard any comment or statement made by the Court during the trial or in these instructions which may seem to indicate an opinion with respect to any fact, item of evidence or verdict to be reached in this case.

No such indication was or is intended.

Even if the inclusion of the definitions arguably could be seen as the trial court asking the jury to pay particular attention to that evidence, another portion of the trial court's instructions specifically told the jury to disregard anything in the instructions that might appear to indicate the court's opinion on the weight to assign any of the evidence, and the inclusion of that curative instruction weighs against a finding of harm. *See Marks v. State*, 617 S.W.2d 250, 252 (Tex. Crim. App. 1981) (instruction by trial judge to disregard comments made by him or her is generally sufficient to cure any error arising from his or her statements); *Aschbacher v. State*, 61 S.W.3d 532, 539 (Tex. App.—San Antonio 2001) (pet. ref'd) (same). In view of the jury charge as a whole, we cannot conclude that this factor weighs in favor of a conclusion that the error was harmful, in the sense that it was calculated to injure appellant's rights. *See Trevino*, 100 S.W.3d at 243.

**2. The Arguments of Counsel**

Although it accurately observed that a focus of counsel's arguments was on the evidence with respect to whether penetration of the female sexual organ had occurred, the court of appeals failed to consider that the arguments were aimed at the broader question of the complainant's credibility as a whole with respect to whether appellant was guilty or not guilty of any sexual touching of the complainant, rather than at whether appellant was guilty of aggravated sexual assault or was instead guilty of the lesser offense of indecency with a

child.[3]    In light of appellant's defensive theory that was focused on undermining the complainant's credibility by showing that no sexual touching of any kind had occurred, we conclude that the record fails to reveal that appellant's defense was affected by the inclusion of the accurate definitions.  We, therefore, conclude that this factor weighs against any finding of harm.

A review of defense counsel's arguments indicates that his contention that penetration had not occurred was to show that the complainant was fabricating the entire incident.  In opening arguments, defense counsel informed the jury that this was a "he said/she said scenario" that would pit the credibility of the complainant against the credibility of appellant.  Counsel stated, "[U]ltimately, the evidence is going to boil down to the credibility of that child versus the credibility of her dad."  During closing arguments, defense counsel asserted that the complainant was "not telling the truth," and he further stated that, although the prosecutor was going to "tell [the jurors] all day long that she's credible" because "[t]hat's his job," it was apparent that "[n]ot even [the prosecutor] believe[s] what that child said beyond a reasonable doubt."  Defense counsel's arguments that the complainant was inconsistent as to whether penetration had occurred culminated in his statement, "That is important because hanging on such a crucial area of this thing, the child is not telling the truth.  Where else is she not telling the truth?"  As demonstrated through that succinct

---

[3]*See* TEX. PENAL CODE § 21.11(a)(1), (c) ("A person commits an offense if, with a child younger than 17 years of age, . . . the person: engages in sexual contact with the child[.]"; "sexual contact" means "any touching by a person . . . of the anus, breast, or any part of the genitals of a child" if "committed with the intent to arouse or gratify the sexual desire of any person[.]").

argument, appellant's theory challenged the entire credibility of the complainant, and that argument was unaffected by the inclusion of accurate definitions as to the common meaning of the phrase penetration of the female sexual organ.

The remainder of counsel's argument similarly challenged the complainant's credibility. Counsel focused on the lack of physical evidence in the case; the complainant's version of events leading up to the incident; and the fact that the complainant was a "troubled child" who had "resentment to not only [appellant] but also to [her] mom for just not being there for all those years when she was young." Counsel told the jury that it would have to make a decision based on "the credibility of her story and the credibility of [appellant's] story[.]"

Based on its assessment that the issue of whether penetration had occurred was the "focus" of counsel's questioning and closing arguments, the court of appeals concluded that this factor weighed in favor of a finding of some harm. *See Green*, 434 S.W.3d at 739. We, however, determine that the record demonstrates that counsel's purpose in focusing on penetration was to argue that the complainant's story was lacking in credibility as to the occurrence of any sexual contact, not to address the more specific points of whether the alleged conduct, if proven, would constitute penetration of the female sexual organ within the meaning of the aggravated-sexual-assault statute. Under these circumstances, the erroneous instructions describing the common meanings of statutory terms would have had no bearing on the likely success of appellant's defensive strategy.

We conclude that, to the extent that it focused on the evidence of penetration, defense counsel's argument sought an all-or-nothing outcome based on the jury's finding that the complainant's testimony regarding sexual contact between her and appellant was wholly fabricated. Defense counsel never argued that appellant was guilty of only some lesser sexual offense based on the type of sexual contact that occurred. Because defense counsel's arguments and theory focused on establishing that the complainant fabricated the entire sexual incident, we conclude that the record fails to reveal that appellant's defensive strategy was affected by the erroneous definitions. *See Cornet v. State*, 417 S.W.3d 446, 454-55 (Tex. Crim. App. 2013) (rejecting Cornet's claim that he was harmed by trial court's omission of medical-care-defense instruction from jury charge, in part, because it was "clear that the jury believed the complainant and disbelieved [Cornet's] claims that he was only touching the complainant with his hand to provide medical care"; because the record "strongly indicate[d] that the jury considered and rejected [Cornet's] claim that his contact with the complainant was for her medical care," error was harmless).

**3. The Entirety of the Evidence and Any Other Relevant Information**

Examining the entirety of the record, we conclude that this factor also weighs against a finding of harm. We disagree with the court of appeals's determination that inclusion of the definitions caused harm to appellant on the basis that the evidence was "hotly contested" as to whether appellant penetrated the complainant's female sexual organ. To the extent that the parties disputed the evidence on the element of penetration, the focus of that dispute was

aimed at the broader question of whether the complainant was credible in stating that appellant had sexually touched her at all.

We note here that the complainant's testimony was largely consistent in describing the nature of the touching done by appellant, regardless of her apparent belief that there had been no penetration of her female sexual organ, as she understood that phrase. She consistently stated that appellant's hand was "in the boxers that [she] was wearing"; that he "was rubbing the lips . . . to [her] vagina" in a "circle"; and that he went in between the lips. The complainant further testified that appellant "took his hand out and it sounded as if he either smelled or licked his hand." Although it is true that she varied in the particular terminology that she used to describe appellant's conduct, the complainant's testimony was factually consistent with respect to the type of touching that took place. Based on her subjective understanding of the phrase, the complainant also consistently said that appellant had not penetrated her female sexual organ.

Because the definitions supplied by the trial court were inconsistent with the complainant's testimony that appellant had not penetrated her female sexual organ as she understood that phrase, the definitions supplied by the trial court actually conflicted with the complainant's testimony and thus could not have harmed appellant's theory that the complainant lacked credibility in this respect.

Although not mentioned by the court of appeals in its harm analysis, the trial court, at the State's request, included a jury instruction on the lesser-included offense of indecency

with a child as an alternative to aggravated sexual assault of a child. *See* TEX. PENAL CODE §§ 21.11(a)(1), (c), 22.021(a)(1)(B)(i). Because this was not his defensive theory at trial, defense counsel objected to the inclusion of this instruction, stating, "This defense did not prepare for a trial dealing with indecency. It did not do any voir dire . . . that it could have done if the charge was indecency. . . . The defense was not asking for that in this case . . . . The lesser included charge I believe denies my client [his] right to adequately and properly prepare for a jury trial because this was not something that we were prepared to defend." Appellant's objection to the inclusion of the lesser offense plainly shows that his defensive theory did not turn on the particular definition of the phrase describing penetration of the female sexual organ but was instead focused on an all-or-nothing strategy premised on an assertion that no sexual touching of any kind occurred. Furthermore, appellant never suggested at any point during the trial that the jury should find him guilty only of indecency by sexual contact on the basis that he was guilty merely of touching that did not constitute penetration of the female sexual organ.

Given that the central dispute at trial was as to the complainant's credibility in asserting that appellant had sexually touched her at all, as opposed to a factual dispute as to the type or degree of touching alleged by the complainant, we conclude that appellant was not harmed by the definitions under these circumstances. Finding no other relevant information in the record, we conclude that, in view of the entirety of the record, the erroneous inclusion of the accurate definitions did not harm appellant, in the sense that the

error was not calculated to injure his rights.  *See Almanza*, 686 S.W.2d at 171.

### III. Conclusion

Although it was error to define the words "female sexual organ" and "penetration," the definitions did not cause harm to appellant.  We reverse the judgment of the court of appeals and remand for consideration of appellant's other appellate issues.

Delivered: December 16, 2015

Publish