**Affirmed and Opinion Filed June 9, 2021**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-19-01328-CR**

**JERRY LYNN TURNER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 397th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. 070819**

## OPINION

Before Justices Partida-Kipness, Pedersen, III, and Goldstein
Opinion by Justice Pedersen, III

A jury found appellant Jerry Lynn Turner guilty of continuous sexual abuse of a child under fourteen years of age. The trial court assessed his punishment at fifty years' confinement and a $1,000 fine. Appellant raises five issues, including a request for us to modify the judgment to correct several clerical errors. As modified, we affirm the trial court's judgment.

### I.   BACKGROUND

This case involves two sisters under fourteen years of age: M.R.S. and M.F.S. Appellant is the step-grandfather of the children, married to the girls' maternal grandmother ("Grandmother"). On the evening of May 16, 2018, then five-year-old

M.R.S. was spending the night at her Grandmother's one-bedroom residence. Grandmother, appellant, and M.R.S. were the only people in the residence that evening. At about 11:30 p.m., Grandmother placed M.R.S. on a cot that was in the bedroom. Grandmother fell asleep on the bed in the bedroom. Fifteen minutes later, Grandmother awoke and saw she was alone. Grandmother had a "strange feeling" and got up to check the living room.

Grandmother entered the living room and saw appellant seated with M.R.S.'s pelvic region in his lap. M.R.S. was face up; her gown was pulled up; and her shorts and underwear were pulled down to her knees. Appellant's pointer and middle finger on his right hand were bent, touching M.R.S.'s vagina. M.R.S. moved her arms down in an attempt to push appellant away and stated, "No, stop, it hurts my tummy." Grandmother intervened and moved M.R.S. into the bedroom. Grandmother confronted appellant in the living room. Appellant threatened that he would commit suicide if Grandmother called the police. Grandmother responded she was going to call the police. Appellant took his insulin and a needle, and he left the residence.[1] Grandmother called the police.

Detective Tyler Halter arrived at about 1:30 a.m. and arranged for M.R.S. to undergo a sexual assault exam at a hospital at 3:00 a.m. Grandmother, M.R.S., the children's mother ("Mother"), and Detective Halter traveled to the hospital's

---

[1] Appellant has been diagnosed with diabetes since 1994 or 1995.

emergency room. When they arrived, Detective Halter saw appellant was seated in the waiting room of the emergency room. Detective Halter separated Grandmother, M.R.S., and Mother from appellant. Detective Halter spoke with appellant while M.R.S. underwent her sexual assault exam. The exam showed M.R.S. had "tenderness on the left clitoral hood," which was consistent with digital penetration. Appellant was arrested in May 2018.

On March 8, 2019, then seven-year-old M.F.S. made an outcry of sexual abuse to forensic interviewer Melisa Harris at the Grayson County Child Advocacy Center. M.F.S. reported that appellant had touched her vagina with his penis. M.F.S. identified appellant as the person who touched the outside and inside of her vagina. M.F.S. identified that appellant touched her butt. M.F.S. described appellant's penis and "white stuff coming out of his penis." M.F.S. explained there were several sexual assaults, which occurred at different places and times, including when appellant lived with her family in a house on Carr Street and when appellant and Grandmother lived at the Sherman Inn. The girls' mother testified that appellant lived with the family on Carr Street until November 2015. Evidence further showed appellant lived at the Sherman Inn from November 27, 2017 until January 8, 2018.

Appellant was ultimately indicted on the offense of continuous sexual abuse of a child under the age of fourteen.[2] Appellant was tried, found guilty of that offense, and sentenced to fifty years in prison. This appeal followed.

## II.    ISSUES RAISED

Appellant raises five issues as follows:

1.    Whether the evidence is legally sufficient to support a finding of guilt as it relates to paragraph 5 of Count 1.

2.    Whether the trial court's charge erroneously allowed the jury to convict Appellant for conduct alleged to have occurred on only one day instead a [sic] period of thirty days or more and resulted in egregious harm.

3.    Whether the trial court commented on the weight of the evidence by including a definition of "penetration" and resulted in egregious harm.

4.    Whether the trial court erroneously omitted an instruction on voluntariness and resulted in egregious harm.

5.    Whether clerical errors in the judgment must be corrected.

## III.    STANDARDS OF REVIEW

### A. Legal Sufficiency

To evaluate the sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.

---

[2] This count is referred to as Count 1 in the indictment and jury charge. There were five total counts in the indictment.

–4–

*Acosta v. State*, 429 S.W.3d 621, 624–25 (Tex. Crim. App. 2014); *see also Jackson v. Virginia*, 443 U.S. 307 (1979). "This standard tasks the factfinder with resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts." *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). Our duty is to ensure that the evidence presented supports the jury's verdict and that the State has presented a legally sufficient case of the offense charged. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). "[O]ur role is not to become a thirteenth juror," and we "may not re-evaluate the weight and credibility of the record evidence and thereby substitute our judgment for that of the fact-finder." *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *modified by Guidry v. State*, 9 S.W.3d 133 (Tex. Crim. App. 1999).

### B. Jury Charge Error

In *Jennings v. State*, the court of criminal appeals held that all jury charge errors, including errors or omissions in the verdict form, are cognizable on appeal despite a lack of objection in the trial court. 302 S.W.3d 306, 311 (Tex. Crim. App. 2010). We review a jury charge issue first to determine whether error exists; then we analyze any error for harm. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If there was error and appellant objected to the error at trial, then only "some harm" is necessary to reverse the trial court's judgment. *Mendoza v. State*, 349 S.W.3d 273, 278 (Tex. App.—Dallas 2011, pet. ref'd) (citing *Jimenez v. State*, 32 S.W.3d 233, 237 (Tex. Crim. App. 2000)); *see also Almanza v. State*, 686 S.W.2d

157, 171 (Tex. Crim. App. 1985) (op. on reh'g). If, as in this case, the defendant failed to object at trial, then the defendant will obtain a reversal only if the error was "'so egregious and created such harm that defendant has not had a fair and impartial trial'"—in short, egregious harm. *Keller v. State*, 604 S.W.3d 214, 229 (Tex. App.—Dallas 2020, pet. ref'd) (quoting *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (citing *Almanza*, 686 S.W.2d at 171)).

Egregious harm is the type and degree of harm that (i) affects the very basis of the case, (ii) deprives the defendant of a valuable right, or (iii) vitally affects a defense theory. *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008). In determining whether there was egregious harm, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information [revealed] by the record of the trial as a whole." *Trejo v. State*, 280 S.W.3d 258, 261 (Tex. Crim. App. 2009) (quoting *Almanza*, 686 S.W.2d at 171). Egregious harm is a difficult standard to meet and must be determined on a case-by-case basis. *Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002).

## IV. DISCUSSION

### Issue One: Whether the evidence is legally sufficient to support a finding of guilt as it relates to paragraph 5 of Count 1

Regarding the offense of continuous sexual abuse of young child or children, the relevant portions of Texas Penal Code § 21.02 state:

(b) A person commits an offense if:

(1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and

(2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age, regardless of whether the actor knows the age of the victim at the time of the offense.

(c) For purposes of this section, "act of sexual abuse" means any act that is a violation of one or more of the following penal laws:

. . . .

(2) indecency with a child under Section 21.11(a)(1),[3] if the actor committed the offense in a manner other than by touching, including touching through clothing, the breast of a child;

. . . .

(4) aggravated sexual assault under Section 22.021;

. . . .

(d) If a jury is the trier of fact, members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed. The jury must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse.

PENAL § 21.02(b)–(d) (footnote added). Count 1 of the jury charge contained six allegations of sexual abuse against appellant and read as follows:

[I]f you find from the evidence beyond a reasonable doubt that [appellant], did then and there, during a period that was 30 or more days in duration, namely from on or about the 3rd day of June, 2017, through on or about the 16th day of May, 2018, when the defendant was 17 years of age or older, commit two or more acts of sexual abuse against a child or children younger than 14 years of age, namely;

---

3 Section 21.11(a)(1) states, "A person commits an offense if, with a child younger than 17 years of age, whether the child is of the same or opposite sex and regardless of whether the person knows the age of the child at the time of the offense, the person engages in sexual contact with the child or causes the child to engage in sexual contact." TEX. PENAL CODE ANN. § 21.11(a)(1).

[1] intentionally or knowingly cause the penetration of the sexual organ of M.R.S., a child who was then and there younger than 14 years of age, by the defendant's finger;
[2] with the intent to arouse or gratify the sexual desire of the defendant, engage in sexual contact with M.R.S., by touching the genitals of M.R.S., a child younger than 14 years of age;
[3] intentionally or knowingly cause the penetration of the sexual organ of M.F.S., a child who was then and there younger than 14 years of age, by the defendant's sexual organ;
[4] with the intent to arouse or gratify the sexual desire of the defendant, engage in sexual contact with M.F.S., by touching the genitals of M.F.S., a child younger than 14 years of age;
[5] intentionally or knowingly cause the penetration of the anus of M.F.S., a child who was then and there younger than 14 years of age, by the defendant's sexual organ;
[6] with the intent to arouse or gratify the sexual desire of the defendant, engage in sexual contact with M.F.S., by touching the anus of M.F.S., a child younger than 14 years of age; you will find [appellant] guilty of Continuous Sexual Abuse Of Young Child, as charged in the indictment.

Appellant contends that (i) the evidence is legally insufficient to support a finding of guilt as it relates to paragraph 5 of Count 1 and therefore (ii) the jury's conviction on Count 1 must be reversed. We disagree with that contention.

It was undisputed that appellant was seventeen years of age or older during the relevant period. For a conviction under § 21.02, the State was required to introduce evidence and prove beyond reasonable doubt that at least two of the six allegations brought against appellant in Count 1 of the indictment occurred during a period that was 30 or more days in duration. *See* PENAL § 21.02(b)–(d). Thus, the allegation in paragraph 5 of Count 1 was not solely determinative of whether appellant committed the offense of continuous sexual abuse of a young child or

children. *See* PENAL § 21.02(d).[4] Here, the verdict did not state which specific paragraphs from Count 1 the jury found appellant had committed. Nevertheless, the jury saw and heard evidence from several witnesses and viewed documents as to each allegation against appellant.

Grandmother and M.R.S. testified in open court as to the May 16, 2018 incident; they both testified that appellant touched M.R.S.'s vagina. Grandmother testified witnessing, firsthand, (i) appellant's touching M.R.S.'s vagina and (ii) seeing only the top part of appellant's right hand knuckles with the fingers pointing toward M.R.S.[5] Grandmother testified M.R.S. was attempting to push appellant's hand away while saying, "No stop, it hurts my tummy." M.R.S., who was six years old at the time of trial, testified that appellant touched her "in a place where [she goes to] pee at" when she was five years old. M.R.S. described appellant touched her with his hand on the outside and that it "felt bad." Nurse examiner Joanne Sulewski testified that M.R.S. had tenderness on the inside of her vulva "inside the female sexual organ" during her May 17, 2018 sexual assault examination. Sulewski testified M.R.S. said "ouch" when she touched the area during the examination. Sulewski testified that "no child is going to hurt themselves down there—no child is going to do that to themselves." Sulewski explained such

---

[4] Appellant raises no complaint as to the legal sufficiency of the remaining five paragraphs of Count 1.

[5] The testimony of City of Sherman Police Department dispatcher Zachary Bohannon and the recording of Grandmother's 911 call to Bohannan further corroborate Grandmother's testimony.

an injury or penetration was consistent with digital penetration and sexual abuse. Clinical therapist Colby Perez testified that M.R.S. specifically told him during therapy "[appellant] touched her near her breast and vagina." Perez testified that M.R.S. said "[appellant] threatened if she were to talk about anything that was happening."

The record also contains evidence that appellant sexually abused M.F.S. at least 30 days before May 16, 2018. M.F.S., who was eight years old at the time of trial, testified that appellant touched and penetrated her vagina when she lived at her house on Carr Street, at Sherman Inn, and at "many other places." M.F.S. did not recall specific dates of the abuse and instead described where and with whom she was staying during the incidents of sexual abuse. The record shows Grandmother and appellant resided at Carr Street with M.F.S., Mother, and the children's father from August 2015 to late 2015 or early 2016. The record shows Grandmother and appellant stayed at Sherman Inn from June 3, 2017, to January 8, 2018. Grandmother confirmed she, at times, left M.F.S. alone with appellant. M.F.S. testified to a specific instance of sexual abuse while Grandmother and appellant stayed at Sherman Inn. M.F.S. testified she was alone with appellant because Grandmother went to "the store or something." M.F.S. testified she saw appellant's penis, and appellant touched the inside and outside of her vagina with his penis. M.F.S. described being on her back and that appellant touched her skin. M.F.S. described "white stuff" came out of appellant's penis and that appellant cleaned it up with a

rag. M.F.S. testified the first time this happened was when Grandmother and appellant lived with her at Carr Street. M.F.S. testified no one else saw these sexual assaults.

On March 21, 2019, sexual assault nurse examiner Elizabeth Wolfe performed a non-acute exam on M.F.S. who made one comment during the exam to Wolfe: "It's hard . . . Grandpa, we were in a lot of places. I was a lot of ages." The record shows M.F.S. made an outcry of these events to Harris on March 8, 2019. At that time, M.F.S. told Harris the same set of facts, specifically identifying that the sexual abuse "happened at lots of different places, at lots of different times. She identified the Sherman Inn, her house [on Carr Street], and her Uncle Michael's house." M.F.S. also told Harris that appellant "had touched her butt with his penis, and that at one point white stuff came out of his penis." Apart from live testimony of witnesses, the trial court admitted photographs of Grandmother's residence, records of Grandmother and appellant's rentals at Sherman Inn, demonstrative drawings which M.R.S. and M.F.S. used to identify their body parts and  to describe appellant's touches, and medical records of M.R.S. and M.F.S.'s exams.

Appellant testified he never sexually abused M.R.S. or M.F.S. Thus, the fundamental issue as to the allegations was one of credibility. The jury is the sole judge of the credibility and weight to attach to witness testimony. *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). The verdict establishes that the jurors believed M.R.S., M.F.S., Grandmother, and the prosecution's other witnesses rather

–11–

than appellant. Furthermore, the testimony of a child victim is sufficient by itself to support a conviction for sexual assault of a child. TEX. CODE CRIM. PROC. ANN. art. 38.07(a). Considering the evidence in the light most favorable to the verdict, we conclude that a rational juror could have found beyond a reasonable doubt that appellant committed the offense of continuous sexual abuse of young children. We overrule appellant's first issue.

**Issue Two: Whether the trial court's charge erroneously allowed the jury to convict Appellant for conduct alleged to have occurred on only one day instead of during a period of thirty days or more and resulted in egregious harm**

Appellant contends error existed in the trial court's charge of Count 1 because it "instructed the jury that it could convict Appellant of continuous sexual abuse of a young child by finding that he committed two acts of abuse on the same, single day." Our first step is to determine whether error exists. *Ngo*, 175 S.W.3d at 743.

The definitions portion of the jury charge instructed:

> Our law provides that a person commits the offense of Continuous Sexual Abuse of a Young Child if (1) during a period that is 30 days or more in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and (2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is younger than 14 years of age.

The jury charge specifically instructed, "The jury must agree unanimously that the defendant, during a period that is 30 days or more in duration, committed two or more acts of sexual abuse." As quoted above, the jury charge further instructed:

–12–

if you find from the evidence beyond a reasonable doubt that [appellant], did then and there, *during a period that was 30 days or more in duration . . .* commit two or more acts of sexual abuse against a child or children younger than 14 years of age . . . you will find [appellant] guilty of Continuous Sexual Abuse Of Young Child.

(emphasis added). The record does not contain an instruction that the jury could convict appellant of continuous sexual abuse of a young child by finding that he committed two acts of abuse on the same, single day. We conclude there is no error in the jury charge with respect to the trial court's instructions on the acts or period of time required to establish the offense of continuous sexual abuse of a young child. *See* PENAL § 21.02(b)–(d). We do not reach harm analysis on this issue. We overrule appellant's second issue.

**Issue Three: Whether the trial court commented on the weight of the evidence by including a definition of "penetration"**

The jury charge stated "[p]enetration is complete however slight" under the "Definitions" section.[6] Appellant contends that this language on the term "penetration" was an erroneous definition. The State's brief concedes the language was erroneous. However, mandatory precedent establishes that such language is (i) analyzed as an instruction and (ii) not erroneous. Texas courts have repeatedly held that a jury instruction stating "penetration is complete however slight" is a correct statement of law and a proper instruction in sexual assault cases. *Henry v. State*, 103 S.W.2d 377, 380 (1937) (holding the jury should have been charged that

---

[6] The "Definitions" section of the jury charge included both instructions and definitions.

the term "act of intercourse" meant "any degree of penetration, however slight, of the person of prosecuting witness by defendant");[7] *see*, *e.g.*, *Arriaga v. State*, No. 05-09-00815-CR, 2010 WL 2404693, at *3 (Tex. App.—Dallas June 17, 2010, pet. ref'd) (not designated for publication);[8] *accord Sherbert*, 531 S.W.2d at 637 (holding in an appeal on the sufficiency of the evidence that "[w]hile proof of the slightest penetration is sufficient, this element of the offense must be proved beyond a reasonable doubt.").[9]

Nevertheless, trial courts have been, and should be, cautioned against using non-statutory language regarding "penetration" in jury charges, particularly if more detailed than the historically accepted "penetration is complete, however, slight." With respect to language permitted in a jury charge, Texas Code of Criminal Procedure article 36.14 provides:

> the judge shall, before the argument begins, deliver to the jury, except in pleas of guilty, where a jury has been waived, a written charge distinctly setting forth the law applicable to the case; not expressing any

---

[7] *Henry* is the earliest opinion we could locate on this topic. We cite to this precedent with some distaste and regret as it is replete with misogyny.

[8] We note that our opinion in *Arriaga* contains an inaccurate parenthetical citation that *Sherbert v. State*, 531 S.W.2d 636 (Tex. Crim. App. 1976), cited *Henry*. *Arriaga*, 2010 WL 2404693, at *3. Although both the *Sherbert* and *Henry* opinions refer to this penetration instruction, the *Sherbert* opinion does not cite *Henry*. *See generally Sherbert*, 531 S.W.2d at 637.

[9] *See also Wilson v. State*, 905 S.W.2d 46, 48–49 (Tex. App.—Corpus Christi–Edinburg 1995, no pet.) (holding the instruction "penetration is complete, however slight" was not an improper definition); *Rawlings v. State*, 874 S.W.2d 740, 744 (Tex. App.—Fort Worth 1994, no pet.) (holding the instruction "'penetration' is complete however slight" was not a definition—rather an instruction to the jury that the penetration element of the State's case would be satisfied if the evidence showed penetration, however slight, beyond a reasonable doubt—which was neither an improper definition nor an improper comment on the weight of evidence); *Zuniga v. State*, 811 S.W.2d 177, 180 (Tex. App.—San Antonio 1991, no pet.) (holding "[p]enetration, however slight, will sustain a sexual assault allegation"); *Galloway v. State*, 716 S.W.2d 556, 557 (Tex. App.—Waco 1986, no pet.) (affirming that "'penetration is complete however slight' has been held to be a proper instruction in a rape case").

opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury.

TEX. CODE CRIM. PRO. ANN. art. 36.14.

Regarding "definitions" in jury charges, the Texas Court of Criminal Appeals has held:

> definitions for terms that are not statutorily defined are not considered to be the "applicable law" under Article 36.14, and it is thus generally impermissible for the trial court to define those terms in the jury instructions.
> . . . .
> Consistent with the terms of Article 36.14, we have explained that jurors should be permitted to freely read [undefined] statutory language to have any meaning which is acceptable in common parlance.

*Green v. State*, 476 S.W.3d 440, 445 (Tex. Crim. App. 2015) (citations omitted, quotation omitted).[10]

In *Green*, the Texas Court of Criminal Appeals held the term "penetration" was not statutorily defined and had not acquired a particular technical meaning, so it was error for a trial court to define penetration:

> as something that "occurs so long as contact with the female sexual organ could reasonably be regarded by ordinary English speakers as more intrusive than contact with the outer vaginal lips and is complete, however slight, if any[.]"

---

[10] *Green* did not specifically overrule or abrogate *Henry*, which has existed and been followed for 84 years.

476 S.W.3d at 444-46.[11] Yet, in *Vernon v. State*, the Texas Court of Criminal Appeals—in addressing an appeal on the sufficiency of the evidence—held:

> it is not ungrammatical to describe Appellant's touching of complainant in this case as a penetration, so long as contact with the injured part of her anatomy could reasonably be regarded by ordinary English speakers as more intrusive than contact with her outer vaginal lips.

841 S.W.2d 407, 409 (Tex. Crim. App. 1992); *see Karnes v. State*, 873 S.W.2d 92, 96 (Tex. App.—Dallas 1994, no pet.) ("[T]he court of criminal appeals recently defined the term penetration within the meaning of the aggravated sexual assault statute. . . . Penetration, within the meaning of section 22.021 of the penal code, occurs so long as contact with the female sexual organ could reasonably be regarded by ordinary English speakers as more intrusive than contact with outer vaginal lips." (citing *Vernon*, 841 S.W.2d at 409)).

Unlike the language in *Green*—which partly defined penetration "as contact with the female sexual organ . . . more intrusive than contact with the outer vaginal lips"—the language in the instant jury charge of "[p]enetration is complete however slight" is not erroneous because this latter language did not define the term "penetration." The language "[p]enetration is complete however slight" gave no meaning as to what act constituted penetration. *Cf. Vernon*, 841 S.W.2d at 409 ("In

---

[11] The *Green* dissent noted that the defense had presented the "more commonly used penetration instruction that some courts have held not to be a comment on the weight of the evidence – 'penetration is complete, however slight,'" with the trial court choosing to erroneously include the more detailed penetration language. 476 S.W.3d at 452-53. *Green* was limited to the definition before that court, which was different, on its face, from the instruction before our Court. *Green*, 476 S.W.3d at 444-47.

contexts like that of the aggravated sexual assault statute, 'penetrate' may mean 'to enter into' or 'to pass through.'").[12] That is, the language "is complete however slight" does not (i) ascribe any particular meaning to the word "penetration" or (ii) intimate that "penetration" means contact, an intrusion of any kind, entry of any kind, or a passing through of any kind. *See Green*, 476 S.W.3d at 444; *Vernon*, 841 S.W.2d at 409. Rather, the language "[p]enetration is complete however slight" served as an instruction on the degree of penetration required under the aggravated sexual assault statute. *See* PENAL § 22.021(a)(1)(B); *Henry*, 103 S.W.2d at 380.

Even if we were to assume the inclusion of the non-statutory language "[p]enetration is complete however slight" was error, appellant has not established that he was egregiously harmed, and such error would be harmless. *See Keller*, 604 S.W.3d at 229. Texas courts have consistently held this particular instruction does not constitute an improper comment on the weight of evidence. *See*, *e.g.*, *Wilson*, 905 S.W.2d at 48–49. As we conclude above, the trial court's instruction did not define "penetration." The instruction in this case did not direct the jury to a specific conclusion regarding a contested fact issue. The instruction did not single out any

---

[12] Merriam-Webster defines "penetration" as "the power to penetrate" and "the act or process of penetrating." Penetration, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/penetration (last visited April 30, 2021). Merriam-Webster defines "penetrate" as "to pass into or through," "to see into or through," "to affect profoundly with feeling," and "to diffuse through or into." Penetrate, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/penetrate (last visited April 30, 2021).

particular piece of evidence. This instruction was not an improper comment on the weight of evidence. *See id.*

Although the sisters and prosecution offered specific evidence regarding penetration, the defense presented no contrary evidence beyond appellant's testimony (i) generally denying the allegations against him and (ii) that, with respect to the May 16, 2018 incident, he could not have positioned his right hand as Grandmother described.[13] Furthermore, the defense's cross-examination of the State's witnesses focused on (i) the voluntariness of appellant's actions, (ii) appellant's impaired state due to low blood sugar,[14] and (iii) appellant's alleged intoxication due to his management of his diabetes. Lastly, as we have held above, the fundamental issue as to the allegations against appellant centered around credibility of the witnesses—not the degree of the alleged touching. Consequently, the degree of penetration was not a contested issue.[15]

The record does not otherwise show that the trial court's instruction on "penetration" (i) affected the basis of the case, (ii) deprived the defendant of a valuable right, or (iii) vitally affected a defensive theory. *See Allen*, 253 S.W.3d at

---

[13] Appellant testified, "I would have had to have been double jointed to be able to do something like that. It's impossible. I'm not double jointed."

[14] As to the allegations against him, appellant testified, "I wouldn't do something like that, and if I did, I don't recall it. And[,] the only reason that I wouldn't recall something like that is if I had low blood sugar. That's the only thing I can say in my defense."

[15] We further note that the jury could have found appellant guilty of continuous sexual abuse of a child as charged regardless of whether the touching was by contact with the child's genitals or by penetration, as there were six separate acts alleged.

264; *see also Keller*, 604 S.W.3d at 229. We conclude the trial court did not err in its jury charge instruction that "[p]enetration is complete however slight." We overrule appellant's third issue.

The dissent asserts that our resolution of this third issue is based on "outdated law" and "no longer good law on the question at issue here." However, there is no indication from the Texas Court of Criminal Appeals that *Green* overruled or abrogated *Henry*, *Sherbert*, *Vernon*, *Arriaga*, or any of its progeny regarding the instruction: "Penetration is complete, however slight." *See generally Green*, 476 S.W.3d at 444-47.

Although not raised as an independent issue, appellant contends, without citation, that the jury charge instruction on aggravated sexual assault of a child in Count 1 was erroneous. However, that instruction tracks the language of the governing statute. *See* PENAL § 22.021(a)(1)(B).[16] We have found no support for appellant's contention that such an instruction on aggravated sexual assault of a child

---

[16] The relevant portion of the jury charge stated:

A person commits the offense of Aggravated Sexual Assault of a Child if the person, regardless of whether the person knows the age of the child at the time of the offense, intentionally and knowingly causes the penetration of the mouth of a child by the sexual organ of the actor, or intentionally and knowingly causes the mouth of the child to contact . . . the sexual organ of another, including the actor[.]

is erroneous.[17] Consequently, we conclude this instruction was not erroneous.[18] We do not reach harm analysis on this issue, and we overrule this issue.

**Issue Four: Whether the trial court erroneously omitted an instruction on voluntariness**

Appellant contends that the trial court erred by failing to include an instruction to the jury on "voluntariness" in the jury charge. "A defendant is entitled, upon timely request, to an instruction on any defensive issue raised by the evidence, provided that: 1) the defendant timely requests an instruction on that specific theory; and 2) the evidence raises that issue." *Rogers v. State*, 105 S.W.3d 630, 639 (Tex. Crim. App. 2003). "To preserve possible error for appellate review, the defendant must sufficiently identify the defensive theory for which he seeks an instruction." *Id*. at 639–40. A defendant cannot complain on appeal about the trial judge's failure to include a defensive instruction that he did not preserve by request or objection: he has procedurally defaulted any such complaint. *Vega v. State*, 394 S.W.3d 514, 519

---

[17] Although not raised as a separate issue, appellant appears to challenge the legal sufficiency of the evidence as it relates to this instruction. However, the jury did not convict appellant for aggravated sexual assault of a child. The jury's conviction was for continuous sexual abuse of a young child. And, we have concluded that a rational juror could have found beyond a reasonable doubt that appellant committed the offense of continuous sexual abuse of a young child. Therefore, we do not reach the issue of whether the evidence was legally sufficient to support a conviction of aggravated sexual assault of a child.

[18] Even if we were to assume the charge was erroneous, appellant has not established that he was egregiously harmed. *See Keller*, 604 S.W.3d at 229.

(Tex. Crim. App. 2013) (citing *Posey v. State*, 966 S.W.2d 57, 61 (Tex. Crim. App. 1998)).[19]

Here, the record shows that appellant requested and received an instruction on "involuntary intoxication" in the jury charge. However, the record contains neither a request from appellant on "voluntariness" nor an objection.

> Trial court: Let the record reflect that the Court has worked on the Charge. Previously, [appellant] wanted a particular request on involuntary intoxication. I guess, [appellant] and the State worked together to incorporate it into the existing Charge. That's being presented to the Court by the parties this morning. With respect to the Charge, as it was provided to the Court this morning by the parties, does anyone have any other objections or requests?
>
> State's counsel: Not from the State.
>
> Appellant's counsel: Not from the defense, Your Honor.

Consequently, the jury charge included no instruction on voluntariness.

The Texas Penal Code provides that a "person commits an offense only if he voluntarily engages in conduct, including an act, an omission, or possession." PENAL § 6.01(a). The defense raised facts at trial suggesting that a diabetic patient experiencing low blood sugar could become confused or enter an "altered mental state." Dr. Amit Warke testified that low blood sugar could affect decision making abilities, prevent rational thinking and planning, and, at an advanced stage, could prevent one from appreciating what one was doing. Part of appellant's defense was

---

[19] "When, under general rules of procedural default, an appellate court holds a defendant has procedurally defaulted a particular claim by not timely raising it in the trial court, the appellate court does not concede that 'error' has occurred." *Posey*, 966 S.W.2d at 61.

that, if he did engage in the criminal offense, his actions were not voluntary and were due to his low blood sugar. Nevertheless, appellant neither requested nor objected to the omission of a jury charge instruction on voluntariness. A trial court has no duty to "instruct the jury *sua sponte* on unrequested defensive issues because an unrequested defensive issue is not the law 'applicable to the case.'" *Vega*, 394 S.W.3d at 519. Therefore, we conclude the trial court did not err in omitting an instruction on voluntariness. We do not reach harm analysis on this issue. We overrule appellant's fourth issue.

**Issue Five: Whether clerical errors in the judgment must be corrected**

We have the power to correct and reform the judgment of the court below to make the record speak the truth when we have the necessary data and information to do so, or to make any appropriate order as the law and the nature of the case may require. *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd) (en banc); *see* TEX. R. APP. P. 43.2(b). Should a judgment and sentence improperly reflect the findings of the trial court, "the proper remedy is the reformation of the judgment." *Asberry*, 813 S.W.2d at 529 (citing *Aguirre v. State*, 732 S.W.2d 320, 327 (Tex. Crim. App. 1982)) (op. on reh'g))..

Here, the jury convicted—and the trial court sentenced—appellant on solely Count 1 of the indictment. The jury did not convict appellant on Counts 2, 3, 4, or 5. However, the judgment erroneously includes Counts 2, 3, 4, and 5 under the section titled "Offense for which Defendant Convicted." Accordingly, we sustain

appellant's fifth issue. We delete Counts 2, 3, 4, and 5 in the "Offense for which Defendant is Convicted" section and modify that portion of the judgment to reflect the following: "Offense for which Defendant Convicted: Count 1 SEX ABUSE OF CHILD CONTINUOUS: VICTIM UNDER 14."

## V.    CONCLUSION

As modified, the judgment of the trial court is affirmed.

/Bill Pedersen, III//
BILL PEDERSEN, III
JUSTICE

191328f.p05

Publish
TEX. R. APP. P. 47.2(b)
Partida-Kipness, J., filed a Dissenting Opinion.

–23–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JERRY LYNN TURNER, Appellant

No. 05-19-01328-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 397th Judicial District Court, Grayson County, Texas
Trial Court Cause No. 070819.
Opinion delivered by Justice Pedersen, III. Justices Partida-Kipness and Goldstein participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

"Offense for which Defendant Convicted: Count 1 SEX ABUSE OF CHILD CONTINUOUS: VICTIM UNDER 14."

The judgment's prior references to Appellant's convictions on Counts 2, 3, 4, and 5 in the "Offense for which Defendant Convicted" section are **REMOVED**.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 9th day of June, 2021.